*Ex parte* CHARLES JOHNSON.

No. A26.    Opinion Filed November 19, 1908.

(98 Pac. 461.)

1.    HABEAS CORPUS—Jurisdiction—Courts.  The Criminal Court of Appeals, the Supreme, district. and county courts, and the justices and judges thereof, have concurrent original jurisdiction in habeas corpus.

2.    SAME—Commitment—Inquiry into Validity—"Process Issued Upon Final Judgment."  An order of commitment to hold for trial, issued by a magistrate before whom a person is brought for examination upon a felony charge, after such examination is concluded and a finding made, that there is sufficient cause to believe defendant guilty of a felony, is not "a process issued on any final judgment of a court of competent jurisdiction."

3.    SAME—Scope of Inquiry.  Before indictment or information filed, the duty of the court or judge upon habeas corpus hearing is similar to that of the magistrate upon the preliminary examination, and determines only the particular restraint complained of, and is not necessarily final.

4.    SAME—Successive Applications.  An order of a district judge remanding a prisoner on habeas corpus does not preclude him from making application to this court for habeas corpus.  The constitutional right of the writ is not exhausted by the first remanding order.

5.  **SAME—Jurisdiction—Courts.** In habeas corpus proceedings the Criminal Court of Appeals is a court of original jurisdiction.

6.  **SAME—Grounds of Relief—Want of Evidence.** Where there is no legal or competent evidence to.sustain it, an order of commitment is void.

7.  **SAME—Murder—Evidence—Sufficiency.** Where there is evidence to connect a petitioner charged with murder with the time, place, and motive for killing, the writ will be denied, and petitioner remanded.

(Syllabus by the Court.)

Original application by Charles Johnson for *habeas corpus* and for certiorari in aid thereof. *Habeas corpus* denied, and petitioner remanded to the custody of the sheriff.

This is an original proceeding in this court for a writ of *habeas corpus* and for a writ of certiorari in aid thereof. The petition was signed and verified by the petitioner, and, omitting the formal parts, was as follows:

"Your petitioner, Charles Johnson, most respecfully represents to your honors that he is now illegally and unlawfully restrained of his liberty and detained by M. B. Louthan, sheriff of Grady county, Okla,, in the county. jail at Chickasha, in said county and state; that he is held in custody by virtue of a certain commitment issued by James M. Davis, a justice of the peace in and for Union township, Grady county, Okla., upon a charge of murder. A copy of said commitment is hereto attached and made a part of this petition, marked 'Exhibit A.'

"Your petitioner states that heretofore, to wit, on or about the ———day of September, 1908, he was arrested upon a warrant issued by said justice of the peace, based upon a certain complaint made against him and one E. P. Slade and Fred Wilkinson, charging them with the crime of murder of one Sam Potter, on the 12th day of September, 1908; that he was thereafter carried before said James M. Davis, justice of the peace aforesaid, for the purpose of having an examining trial, and the state introduced its testimony and evidence, and the dedendants their testimony, and as a result of said examining trial said defendant was committed and incarcerated in jail, without bail, upon the charge of murder, as aforesaid. A copy of said warrant is hereto attached and made a part of this petition, marked 'Exhibit. B.'

"Your petitioner further avers that there was no competent or legal evidence introduced at said trial before said James M. Davis, as aforesaid, in any way connecting your petitioner with the said crime of murder for which he was charged, and no evidence introduced upon and from which the said James M. Davis, justice of the peace, aforesaid, could judicially determine that there was reasonable ground or probable cause to believe your petitioner guilty of said crime of murder as aforesaid, and said commitment issued by said James M. Davis, as aforesaid, was without authority of law and exceeded the jurisdiction of said justice of the peace, and therefore the same is null and of no force and effect.

"Your petitioner further states that on, to wit, the———— day of September, 1908, he together with the said E. P. Slade and Fred Wilkinson, presented their petition to the Honorable Frank M. Bailey, district judge of the Fifteenth judicial district, Okla., together with a true and correct copy of all the testimony and evidence taken before the said James M. Davis in the examining trial as aforesaid for a writ of *habeas corpus,* and, after consideration of said petition and the evidence attached thereto, the said Honorable Frank M. Bailey, as aforesaid, made an order allowing your petitioner and the other parties charged with said murder bail in the sum of $1,000 each, but in said order held that there was no evidence connecting your petitioner and the other defend-- ants with said crime, except in a few indirect circumstances.

"Your petitioner states that said Honorable Frank M. Bailey, as aforesaid, committed grevious errors in refusing to grant said writ of *habeas corpus* absolutely, and under the said decision made by the said Honorable Frank M. Bailey your petitioner was entitled to his liberty and to be discharged from custody. A copy of said order made by said district judge, as aforesaid, is hereto attached and made a part of this petition, marked 'Exhibit C.'

"Your petitioner further states that he was and is unable to execute said bond in the sum of $1,000, as aforesand, and that by reason thereof, and by reason of the facts herein alleged, he is still deprived of his liberty unlawfully and without any legal authority.

"Your petitioner alleges that he is entitled to have a writ of certiorari issued by this court, directed to the said Honorable Frank M. Bailey, as aforesaid, commanding him to send up the record, including the petition and the exhibits thereto, including

all the evidence introduced on said hearing, in order that this honorable court may examine into the unlawful imprisonment of your petitioner, as alleged herein.

"Wherefore your petitioner prays that this honorable court grant him a writ of *habeas corpus* herein, and a writ of certiorari directed to the said Honorable Frank M. Bailey, district judge, as aforesaid, to the end that his unlawful imprisonment may be inquired into, and that he may be discharged from said unlawful imprisonment and restored to his liberty, and will ever pray.

"F. E. Riddle, Attorney for Petitioner."

Omitting Exhibits A and B, Exhibit C of said petition was as follows:

"Exhibit C.

"In the District Court in and for the Fifteenth Judicial District, Grady County, Oklahoma.

"*In re* the Application of Charles Johnson, for Writ of *Habeas Corpus*. Order Admitting to Bail.

"Now at this time came on to be heard upon evidence before the committing magistrate and additional evidence and application and petition of Charles Johnson for writ of *habeas corpus* before the undersigned district judge, and he, being well and sufficiently advised in the premises, is of the opinion that said defendant is illegally restrained of his liberty and entitled to bail, and it appearing to the undersigned district judge from the record herein that there is no legal and competent testimony connecting said petitioner with the crime for which he is charged, except indirect circumstances, and that he should be admitted to bail in the sum of $1,000, it is therefore considered and ordered by the undersigned district judge that said petitioner, Charles Johnson, be and he is hereby admitted to bail in the sum of $1,000, and upon the execution of said bail, with sufficient security, as required by law, the sheriff of Grady county is hereby ordered and directed to release said petitioner from his custody and restore him to his liberty under said bond.

"Witness my hand this the 10th day of October, 1908.

"Frank M. Bailey, District Judge."

On the 24th day of October, 1908, writs were allowed as prayed for in said petition, returnable the 27th day of October,

1908, at which time respondent filed his return showing that he held said petitioner by virtue of a commitment issued, as alleged in said petition, and there was also filed in this court the record of said cause, as shown by an agreed statement filed therewith, which is as follows:

"It is hereby agreed by and between attorney for petitioner and B. B. Barefoot, county attorney, that the above and foregoing contains a true and complete record of all the evidence, testimony, and orders made in the *habeas corpus* proceeding before Hon. Frank M. Bailey in said cause, and contains all the evidence considered by said district judge. F. E. Riddle, Attorney for Petitioner. B. B. Barefoot, County Attorney."

The attorney for petitioner also filed a waiver of the presence of the petitioner, and submitted the cause on the petition, the return, the record, and the evidence under the agreed statement.

*F. E. Riddle,* for petitioner.

*B. B. Barefoot,* County Atty., and *W. C. Reeves,* Asst. Atty. Gen., for respondent.

No briefs came to the hands of the reporter.

DOYLE, JUDGE. (after stating the facts as above). It is alleged by petitioner that his restraint is illegal and unauthorized, first, because the magistrate who issued the warrant and commitment acted without authority of law, and exceeded the jurisdiction of a justice of the peace in so doing. The petition, with the exhibits and the return as made, shows that the complaint and warrant were proper in form, and the commitment was regular on its face. The Constitution of the state provides (article 7):

"Sec. 18. The office of justice of the peace is hereby created, and, until otherwise provided by law, courts of justices of the peace shall have, co-extensive with the county, jurisdiction. as examining and committing magistrates, in all felony cases."

Thus it appears that the justice of the peace as an examining magistrate had jurisdiction of the person and of the crime

charged, and did not act beyond the power conferred upon him by the Constitution as such officer. This contention will be, at best, a mere conclusion of law, unless it is based upon the alleged want of probable cause. In support of this contention, petitioner alleges that the district judge of the Fifteenth judicial district, Okla., upon a hearing had before him, determined and found that there was no evidence adduced at said preliminary examination, connecting petitioner with the crime charged. The record shows that subsequent to said commitment, and upon an application therefor made by petitioner to Hon. Frank M. Bailey, district judge of the Fifteenth judicial district, Okla., a writ of *habeas corpus* was allowed by said district judge, commanding the sheriff of Grady county to make return to said writ, and bring the petitioner before said district judge. In obedience to the writ, the petitioner was brought before Judge Bailey, and the cause of his arrest and detention was inquired into and considered, and thereupon said district judge made the findings and order as shown by Exhibit C of the petition herein.

In the outset of our inquiry and investigation we are confronted with section 4867, Wilson's Rev. & Ann. St. (chapter 66, art. 30 § 669), as follows:

Sec. 669. No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following: * * * Second, upon any process issued on any final judgment of a court of competent jurisdiction; or (fourth) upon a warrant of commitment issued from the district court, or any other court of competent jurisdiction, upon an indictment or information."

Construing a statute identical in its language, Chief Justice Horton in the case of *In re Snyder,* 17 Kan. 552, says:

"An order of commitment to hold a prisoner for trial, issued by a magistrate before whom a person is brought for examination, upon a charge of having committed an offense, after such examination is concluded, and a finding made that it appears that the prisoner is guilty as charged in the complaint and warrant, is not 'a process issued on any final judgment of a court

of competent jurisdiction,' nor is such a commitment included in any process named in No. 671 of the Code. Hence there is no prohibition in said section to prevent a court or judge from inquiring into the legality of the imprisonment of a person under. a commitment of an examining magistrate."

We think the rule announced by Chief Justice Horton is correct. It is certainly in point. Section 4868, Wilson's Rev. & Ann. St. 1903 (chapter 66, art. 30, § 670) is as follows:

"Sec. 670. No person shall be discharged from an order of commitment issued by any judicial or peace officer for want of bail, or in cases not bailable, on account of any defect in the charge or process, or for alleged want of probable cause; but in all such cases, the court or judge shall summon the prosecuting witnesses, investigate the criminal charge, and discharge, let to bail or recommit the prisoner, as may be just and legal, and recognize witnesses when proper."

The Supreme Court of Oklahoma in the case of *Ex parte Stevenson,* 20 Okla. 549, 94 Pac. 1071, opinion by Justice Kane, says:

"In the record before us it would seem that the question of former adjudication was not raised in the application for writ of *habeas corpus* before Judge McMillan, but that the case was there presented upon the evidence, and Judge McMillan found against the petitioner. Under the common law administered in England, if one judge refused to discharge a prisoner on the writ of *habeas corpus,* he could appeal to another, and so on, until he had taken the opinion of all the judges accessible We do not want to be understood as adopting or rejecting the common-law rule, or as passing upon the effect of the judgment of Judge McMillan as an estoppel to an original application for a writ of *habeas corpus* before this court. It is true that the same evidence that was presented to Judge McMillan is before us as an exhibit to the petition, but still, where a case has already been once heard upon *habeas corpus* and the prisoner has been remanded, another court will not always deem it expedient to grant another writ and hear the case again on the same evidence. Church on Habeas Corpus, 187. The writ of *habeas corpus* is denied, and the petitioner is remanded to the custody of the sheriff of Cleveland county, state of Oklahoma."

In this case the conclusion only is concurred in by the other members of the court, and the learned justice who rendered the

opinion leaves it an open question whether the finding and order of the district judge is *res adjudicata,* to be reviewed on appeal only.

Under the foregoing provisions of our statutes and the decision last quoted, the question is presented whether this court is prohibited in proceedings · by *habeas corpus* from examining the proceedings or record of a lower court in the cases mentioned, or whether petitioner's remedy is only by appeal to this court. In determining the construction to be given to these provisions, we are mindful that the great object and purpose of the writ of *habeas corpus* is the liberation of those who may be imprisoned without sufficient or probable cause. It is the most simple and speedy remedy. *Habeas corpus* is the great prerogative writ, and is the best protection and most efficient security of personal. liberty known to the law. Its history is lost in antiquity. It was in use before, but the first royal recognition of it is found in Magna Charta. It was guaranteed to our English ancestors by the *habeas corpus* act of 1679, and 'came to us as a part of our inheritance from the mother country. It was secured to the citizen by that part of article 1, § 9, Const. U. S., which provides: "Sec. 9. The privilege of the writ of *habeas corpus* shall not be suspended unless when, in cases of rebellion or invasion, the public safety might require it." And that part of article 14 of the amendments to the Constitution of the United States which provides that no person · shall be deprived of life or liberty "without due process of law."

Justice Tarsney in the case of *In re Patswald,* 5 Okla. 790, 50 Pac. 142, commenting on this provision of the federal Constitution, says:

"This writ cannot be abrogated or its efficiency curtailed by legislative action. Cases within the relief afforded by it at common law cannot, until the people voluntarily surrender the right to this, the greatest of all writs, by an amendment of the organic law, be placed beyond its reach and remedial action. Its privileges cannot be even temporarily suspended, except for the safety of the state in cases of rebellion and invasion. Const. art. 1, § 9. That provision of the Constitution is a guaranty that the

right of the writ of *habeas corpus* should remain as it existed at the common law, and should not be curtailed by legislative enactment or by subtle and metaphysical judicial interpretation, and Legislatures can no more prevent its application to cases where it would have been applicable at common-law than they can abrogate the right of trial by jury."

It is secured to the people of Oklahoma by section 10 of the Bill of Rights, which is as follows: "Sec. 10. The privilege of the writ of *habeas corpus* shall never be suspended by the authorities of this state." The great and leading intent of our Constitution in respect to the writ of *habeas corpus* is manifest. It is that every citizen may be protected by judicial action from unlawful imprisonment. By virtue of this broad and comprehensive provision in the Bill of Rights, and the existing statutes, it is a writ of right; and this court, the Supreme Court, the district and county court, and any justice or judge thereof has power to grant writs of *habeas corpus* for the purpose of inquiring into the cause of restraint of liberty of any person in jail who is in custody in violation of his rights under the Bill of Rights. The Constitution or the laws of the state, and the court, justice, or judge to whom the application is made, shall forthwith allow a writ of *habeas corpus,* unless it appears from the petition itself that the petitioner is not entitled thereto.

While all courts of record have concurrent original jurisdiction a district court or the judge thereof, except as provided by article 25, c. 68, Wilson's Rev. & Ann. St. 1903 (section 5764), can only grant, issue, and determine the writ upon the petition of a party confined in that respective district; and a county court, or judge thereof, can only grant, issue, and determine the writ upon the petition of a party confined in that particular county. Section 4866, Wilson's Rev. & Ann. St. 1903, provides as follows:

"(1) The court, or judge, shall thereupon proceed in a summary way to hear and determine the cause; and if no legal cause be shown for the restraint, or for the continuance thereof, shall discharge the party."

And in all cases of commitment on a criminal charge the duty

of the court or judge thereof upon such hearing is similar to that of the magistrate upon a preliminary examination; and, though the prisoner may be discharged, he may again be arrested for the same offense upon a sufficient showing. While the decision of the court or judge may liberate the prisoner from imprisonment, it does not determine his innocence. He may be charged, tried, and convicted without regard to his discharge upon the writ of *habeas corpus.* Upon such a hearing the guilt of the prisoner of the crime charged or of the right to rearrest him in consequence of it, cannot be finally determined. The order of his discharge simply releases him from the particular restraint to which he is subjected. Such a decision cannot convict him or acquit him of the crime charged. It is not final.

The *habeas corpus* statutes of this state are embodied in the Code of Procedure Civil (chapter 66, art. 30) and the Code of Procedure Criminal (chapter 68, art. 25), Wilson's Rev. & Ann. St. 1903. The provisions above quoted permit the decision of examining magistrates to be reviewable upon *habeas corpus;* otherwise, the *habeas corpus* articles contain no provision for appeal. It is elementary that the right of appeal is a statutory right, and this rule is especially applicable in *habeas corpus* cases.

The courts of several states have held that the decisions in *habeas corpus* cases are not reviewable under a general law allowing an appeal from all final judgments. See *Howe v. State.* 9 Mo. 690; *Ex parte Toney,* 11 Mo. 662; *Ex parte Jiliz,* 64 Mo. 205, 27 Am. Rep. 218; *Carruth v. Taylor,* 8 N. D. 166, 77 N. W. 617; *People v. Conant,* 59 Mich. 565, 26 N. W. 768. In some states the right of appeal has been expressly granted by legislative enactments; in other states the courts hold that a decision in a *habeas corpus* proceeding is appealable under a statute which gives an appeal from a final order affecting a substantial right made in a special proceeding. See *State v. Buckham,* 29 Minn. 462, 13 N. W. 902, and *Winton v. Knott,* 7 S. D. 179, 63 N. W. 783. By virtue of a provision of section 21 of the "Enabling Act" (Act June 6, 1908, c. 3335, 34 Stat. 277) all laws in force in

the territory of Oklahoma at the time of the admission of Oklahoma as a state were extended over and put in force throughout the state, except as modified or changed by the "Enabling Act," or by the Constitution of the state. Thus the adoption of the *habeas corpus* statutes of the territory of Oklahoma was only so far as the same were not repugnant to, or in conflict with, the Constitution of the state. Had it been intended to provide for appeals in *habeas corpus,* some appropriate provision would have been made. Its omission affords the best evidence to the contrary, and, if anything is wanting to remove all doubt, it will be found in the nature and object of this great writ as a Constitutional right; its purpose being to afford a speedy remedy to a party unjustly accused of the commission of a crime without obstructing or delaying public justice, both of which objects would be defeated by the delays consequent upon an appeal. Any other rule would operate practically to subvert the constitutional safeguards and the fundamental rights of the citizen. Section 12 of the act creating the Criminal Court of Appeals (Laws 1907-08. p. 293) provides:

"Sec. 12. Said court and judges, shall have the power to issue writs of *habeas corpus* and under such regulations as provided by law, issue such writs as may be necessary to enforce its own jurisdiction."

Under this section this court exercises original, and not appellate jurisdiction. It is well settled that regulative restrictions of the constitutional privileges of the writ must receive a liberal interpretation at the hands of the courts, with a view of giving the petitioner the full benefits of his constitutional right to the writ.

It is our opinion that under the power with which this court is invested by the Constitution and laws of this state any person restrained of his liberty within the state has the right to invoke the original jurisdiction of this court on *habeas corpus.* And, while a judgment remanding the party on a writ of *habeas corpus* is not subject to review on a writ of error or appeal, it is entitled to some consideration on a second application, and may warrant

the refusal of the second application. In the case at bar, and in all cases where the petitioner on application to a district court, or judge thereof, has been remanded, we are of the opinion that the constitutional right of the party to the writ was not exhausted by the first remanding order, and the petitioner has the right to present his application to this court, as has been done in this case. We believe any other construction of the statute would render it unconstitutional, as unduly infringing upon the powers given to the courts to issue writs of *habeas corpus.*

After an indictment it has never been the practice of courts to look into the question of guilt or innocence on *habeas corpus;* the rule being well stated in the case of *Ex parte Patman,* 20 Okla. 846, 95 Pac. 622. The opinion of the court was rendered by Chief Justice Williams, wherein he says:

"The relator being in custody by the sheriff of Muskogee county to answer an indictment pending and undetermined in the district court of said county for the crime of murder, a writ of *habeas corpus* is prayed for by relator, not that he may be enlarged on bail, but it is claimed by him that he is entitled to an absolute and unconditional discharge from custody. * * * An application for a *habeas corpus* for the purpose and under the circumstances for which this was made, is certainly novel and without precedent in the courts of this state. It would seem to have long since been much too well established by the common law as well as our statutes that an indictment not void upon its face, regularly returned to, and pending in a court having jurisdiction thereof, could only be disposed of by some appropriate proceeding in such court for an experiment such as the present. The practice of common law in the Court of King's Bench is thus stated in Wilmot's Opinions, 106 (Hurd on Habeas Corpus 331) : 'In imprisonment for criminal offenses the court can act upon it only in one of three manners: (1) If it appear clearly that the act for which the party is committed is no crime, or that it is a crime, but he is committed for it by a person who has no jurisdiction, the court discharges. (2) If doubtful whether a crime or not, or whether the party be committed by a competent jurisdiction, or if it appears to be a crime, but a bailable one, the court bails him. (3) If an offense, not bailable, and committed by a competent jurisdiction, the court remands or commits him.' It is certainly essential to the proper discharge of its duties, and

the due and efficient administration of the law, that whenever a court assumed to act in a manner and over parties within its jurisdiction it is its right and duty to proceed to its final determination without interference from any other tribunal. The writ of *habeas corpus* was not designed to operate as a writ of error or certiorari, and does not have their force and effect. It does not deal with error or irregularities which render proceedings voidable merely, but such only as render them absolutely void."

The sole purpose of the certiorari in this case was to produce the record under which the commitment was originally made and upon which the district judge based his findings. However, we believe the proper practice is to require petitioner in this character of cases to produce and make a part of his petition the evidence taken at the preliminary examination.

This brings us to the principal, and probably the real, question in this case: Was there any legal evidence adduced to prove, or tending to prove in any manner, that there is sufficient cause to believe petitioner guilty of the offense charged? If there was no such evidence, the justice of the peace could not make a legal commitment, because, where there is no evidence to sustain it, the commitment is void. If there is no legal and competent testimony connecting petitioner with the crime for which he is charged, as found by the district judge, then the petitioner should be discharged. We have carefully read and reviewed the testimony as shown by the transcript. The testimony shows that one Sam Potter, residing at Minco, Grady county, Okla., was on the night of September 12, 1908, between the hours of 9 and 10 o'clock, foully murdered upon the front porch of his home in said city by having his skull crushed with an iron bar. His body was found lying on the porch with an iron bar beside it. There was no direct testimony as to who committed the crime, but there were circumstances which might well tend, in connection with other facts, to induce a belief in petitioner's guilt. We are constrained to hold that substantially the proof is almost positive that petitioner has guilty knowledge. The evidence against him, we must admit, is not as strong as it might be, and the inference of guilt does not flow from the circumstances with such an

absolute and irresistible certainty as we sometimes find, but still the evidence was sufficient to put petitioner upon his defense. It will not be necessary to notice it in detail. The testimony tends to show that the deceased was the victim of a conspiracy, and within the hour preceding the finding of his dead body petitioner, together with three other persons, consulted near his home regarding money held by deceased, and that petitioner, being one of the number, was directed by his confederates to secure this money from deceased. It further shows that deceased, together with petitioner and his co-defendants, was engaged in questionable, if not criminal, transactions on the day deceased was killed. The testimony further shows that petitioner was seen by several witnesses leading deceased towards his home shortly before the murder was committed. An effort was made, as shown by the testimony, to prove an alibi, but the petitioner or his codefendants did not testify. We deem it sufficient to mention these circumstances which tend, in connection with other facts shown, to prove the guilt of petitioner. The foregoing incriminating circumstances are shown by competent testimony, and not by illegal, incompetent, irrelevant, hearsay, opinion, or secondary evidence. We will not further comment upon the evidence, as we do not desire that our comments should in any way influence the final trial.

Justice Kane in the case of *In re Thomas et al.,* 20 Okla. 167, 93 Pac. 980, in a well-considered opinion, states the rule to be that "the burden of proof is on the petitioner in a capital case to show that he is illegally deprived of his liberty." The reasoning and the rules enunciated therein appeal to, and meet the approval of, this court.

It is the opinion of this court, applying the rules herein enunciated to the facts and circumstances as shown by all the evidence before us, the petitioner is not unlawfully restrained of his liberty, and that respondent, the sheriff of Grady county, Okla., properly and legally holds said petitioner.

The writ of *habeas corpus* is therefore denied, and the peti-

tioner, Charles Johnson, is hereby remanded to the custody of the sheriff of Grady county, Okla.

FURMAN, Presiding Judge, and BAKER, Judge, concur.