*Ex parte* JOHN TURNER.

No. A-394. Opinion Filed November 15, 1909.

(104 Pac. 1071.)

1.  **HABEAS CORPUS—Commitment upon Preliminary Examination —Inquiry Into Validity.** An order of commitment to hold for trial before the district court, issued by a magistrate before whom a person is brought for examination upon a felony charge, after such examination is concluded, and a finding made that there is sufficient cause to believe defendant guilty of the felony, is not "a process issued on any final judgment of a court of competent jurisdiction." as provided under section 4867, Wilson's Rev. & Ann. St. 1903.

2.  **HABEAS CORPUS—Preliminary Examination—Sufficiency of Evidence.** Where there is no legal or competent evidence to sustain it, an order of commitment to hold for trial before the district court, is void, and petitioner will be discharged on **habeas corpus.**

(Syllabus by the Court.)

Original application by John Turner for a writ of *habeas corpus.* Writ allowed, and prisoner discharged.

The petition was filed in this court on the 25th day of October, 1909, and presented to Furman, presiding judge, who on said day allowed the writ, making it returnable before this court on November 6, 1909. The petition sets forth the following facts: That John Turner, petitioner, is illegally restrained of his liberty by L. E. Martin, sheriff of Lincoln county. That such illegal restraint consists in the following: That said petitioner was arrested upon a charge of assault with intent to kill one Thomas Marks, and taken before J. J. Parsons, a justice of the peace in and for Lincoln county, and a preliminary examination was had. That upon such examination there was no evidence offered which showed, or tended to show, in any manner, that an offense amounting to a felony had been committed against or under the laws of the state of Oklahoma, nor was there any evidence offered which showed, or in any manner tended to show, there was any probable cause or belief that said John Turner had been guilty of any of-

fense whatever under the laws of the state of Oklahoma, yet, notwithstanding the premises, the said justice of the peace refused to discharge the said John Turner, and on the 25th day of October issued a commitment, commanding L. E. Martin, sheriff of Lincoln county, to take into his custody and safely keep to await the action of the grand jury at the next term of the district court of Lincoln county, and fixing bail in the sum of $500. Also alleging that the warrant of commitment under which petitioner is held in custody is illegal and insufficient in law, and also an abstract of the testimony taken before the examining magistrate. To which writ a return was made by said sheriff in effect that he had the body of the said petitioner before the court, and for authority and cause of the restraint of the said Turner in his custody he sets forth in his return a copy of the order of commitment, which is as follows:

"Commitment. Justice Court. State of Oklahoma, County of Lincoln—ss.: In Justice Court Before J. J. Parsons, a Justice of the Peace in Osage Township. State of Oklahoma, Lincoln County—ss.: Territory of Oklahoma to the Sheriff or any Constable of Lincoln County: Whereas, John Turner has been brought before me, a justice of the peace for Osage township, upon a charge of attempting to shoot to kill one Thos. Marks, and after hearing the testimony, and it appearing to me that the offense as charged in the complaint has been committed, and that there is sufficient evidence to believe that John Turner is guilty thereof: You are therefore commanded to take said John Turner into your custody and him safely keep to await the action of the grand jury at the next term of the district court of Lincoln county, and that he shall be admitted to bail in the sum of $500, and this you shall in no wise omit. J. J. Parsons, Justice of the Peace. Commitment. Territory of Oklahoma v. John Turner. Issued 25th day of October, 1909."

On the hearing the questions as to the insufficiency of the warrant of commitment were waived, and the case submitted on the question of alleged want of probable cause, and that there was no legal or competent evidence introduced upon said examination, which proved, or tended to prove in any manner, the commission of a felony.

The evidence adduced upon the preliminary before the justice, as an examining magistrate, is substantially as follows: Thomas Marks, the prosecuting witness, testified: That on August 1, 1909, he rented the blacksmith shop and tools from the defendant for $15 per month, payable in advance, and on said day paid one month's rent, and on the 1st day of September again paid said rent. That during the month of September he loaned $7 to defendant, on demand. That on October 7th defendant came to the shop and demanded the rent for October or the balance due after applying the $7 loaned. That he refused to pay the rent, and the defendant tendered back the $7 and demanded possession of the shop and made several attempts to close the shop door, which he resisted and refused to deliver possession. That defendant then made the remark, "I will see if I cannot close this shop," and went away. That he then left the shop, and when he returned he found the shop closed and locked. He further testified that defendant made no threats in his hearing or presence, and "did not point a gun at me, nor in any way attempt to assault me with a gun or any other weapon." That the next morning he paid the balance of the month's rent and has continued in possession of the shop. Charles Stewart testified: That he saw and heard all that was done at the blacksmith shop. That defendant spoke to Thomas Marks about the rent due for the shop. Mr. Marks did not pay him, and defendant told him he was going to take possession of the shop. He attempted several times to close the door, and Marks would push the door open. Mr. Marks was inside, and the defendant on the outside. Mr. Marks told the defendant he could not close the door, and the defendant answered, "I will see if I can't," and went away. Mr. Marks then left the shop and went away. I later saw the defendant coming towards the shop with a rifle in his hand and his son with him. He came to the shop and handed the rifle to his son and told him to take it home, and shut and locked the shop doors and went away. The defendant did not point the gun toward any person or did not make any threats towards the complaining witness. I do not know whether the gun was loaded or not. To

the same effect was the testimony of Lester Anderson and J. J. Williams. There was no testimony offered on behalf of the defendant. Counsel for the defendant moved that he be discharged for the reason that there was no evidence tending to establish the fact that a felony had been committed, which was overruled.

*R. E. Burns,* for petitioner.

*Charles L. Moore,* Asst. Atty. Gen., and *Wilson,* Deputy Co. Atty., for respondent.

DOYLE, JUDGE (after stating the facts as above). It is insisted at the outset, on the part of the state, that: As it appears from the record that a complaint having been made and filed, charging that a felony had been committed, upon which a warrant issued for the defendant, upon which he was arrested, a preliminary examination duly had before an examining magistrate, and thereupon a finding made that the defendant was guilty as charged in said complaint, and his bail fixed in the sum of $500. That petitioner failing to give bail, had been legally committed for trial before the district court of Lincoln county, and that, this so appearing, the petitioner should be remanded upon the record under section 4867, Wilson's Rev. & Ann. St. 1903, wherein it is expressly provided that:

"No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following: * * * Second, upon any process issued on any final judgment of a court of competent jurisdiction; or, fourth, upon a warrant of commitment issued from the district court, or any other court of competent jurisdiction upon an indictment or information."

It was held by this court in the case of *Ex parte Charles Johnson,* 1 Okla. Cr. 414, 98 Pac. 461, where this question was raised, that an order of commitment to hold a defendant for trial, issued by a magistrate upon a preliminary examination, and a finding made that it appears that the defendant is guilty as charged in the complaint, is not "a process issued on any final judgment of a court of competent jurisdiction," nor is such a com-

mitment included in any process named in section 4867, *supra,* and that therefore there is no prohibition in said section to prevent a court or judge from inquiring into the illegality of the imprisonment of a person under a commitment of an examining magistrate.

The material question, however, in this case, is whether on the evidence submitted to us a felonious offense is made out against petitioner.

Counsel for petitioner contend that there was no evidence of the commission of the felony charged, or any other offense, of which under our laws the district court of Lincoln county would have jurisdiction. Section 2206, Wilson's Rev. & Ann. St. 1903, prescribes that:

"Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, air gun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death, or in resisting the execution of any legal process, is punishable by imprisonment in the State prison not exceeding ten years."

This section contains two clauses, and embraces two species of offenses, punishable alike. The first clause relates to shooting, shooting at, or attempting to shoot at, another, with any kind of firearm, air gun, or other means whatever, with intent to kill any person. The complaint in this case was framed upon this clause of said section and charges "an attempt to kill by attempting to shoot." The initial ingredient of this offense is an assault. Certain elements or particulars are therein specified, which when united form the complement of the offense. The facts and circumstances which the evidence offered, prove or tended to prove, do not constitute the elements of the offense charged. At most the evidence offered tended to prove a minor misdemeanor of which the justice court had jurisdiction as a trial court.

While the conduct of the petitioner as shown by the record was reprehensible, upon the evidence as a whole, giving it its full force and effect, there is an absolute failure of proof that the of-

fense of attempting to kill by attempting to shoot was committed, or that there was probable cause to believe petitioner guilty as charged.

In *Hicks v. Com.,* 86 Va. 223, 9 S. E. 1024, 19 Am. St. Rep. 891, the Supreme Court of Virginia, in considering an indictment charging the defendant with attempt to poison, with intent to kill, one A., by buying the poison and delivering it to one L., and soliciting her to administer it in coffee to A., says:

"An attempt to commit a crime is compounded of two elements: (1) The intent to commit it; and (2) a direct ineffectual act done towards its commission."

2 Bishop, Crim. Proc. par. 71. Or, as Wharton defines it:

"An attempt is an intended, apparent, unfinished crime."

Therefore the acts must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must be not merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made. *McDade v. People,* 29 Mich. 50; Bouv. Law. Dict. "Attempt."

It has been often held that the purchase of a gun with intent to commit murder, or the purchase of poison, with the same intent, does not constitute an indictable offense, because the act done in either case is considered as only in the nature of a preliminary preparation, and as not advancing the conduct of the accused beyond the sphere of mere intent. "To make the act an indictable attempt," says Wharton, "it must be a cause, as distinguished from a condition; and it must go so far that it would result in the crime, unless frustrated by extraneous circumstances." 1 Whart. Crim. Law, par. 181.

This principle is well illustrated by the case of *People v. Murray,* 14 Cal. 159. In that case the defendant was indicted for an attempt to contract an incestuous marriage with his niece. It was shown that, after declaring his intention to marry her, he actually

eloped with her, and sent for a magistrate to perform the ceremony, and at the trial he was convicted; but on appeal the judgment was reversed, the appellate court holding that these were mere preparations, and did not constitute an attempt, within the meaning of the statute. In delivering the unanimous opinion of the court, Field, C. J., said:

"The evidence shows very clearly the intention of the defendant; but something more than the mere intention is necessary to constitute the offense charged. Between preparation for the attempt and the attempt itself there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement towards the commission after the preparations are made. To illustrate: A party may purchase and load a gun, with the declared intention to shoot his neighbor; but, until some movement is made to use the weapon upon the person of his intended victim, there is only preparation, and not an attempt. For the preparation he may be held to keep the peace, but he is not chargeable with any intent to kill. So, in the present case, the declarations and elopement and request for a magistrate were preparatory to the marriage; but until the officer was engaged, and the parties stood before him, ready to take the vows appropriate to the contract of marriage, it cannot be said in strictness (i. e., in a legal sense) that the attempt was made. The attempt contemplated by the statute must be manifested by acts which would end in the consummation of the particular offense but for the intervention of circumstances independent of the will of the party."

Whatever may been petitioner's intention, there is no testimony showing any overt act in an attempt to kill or injure, and the allegation of want of probable cause is therefore sustained.

For the reasons stated herein, we are of opinion that there is no legal authority for holding the petitioner in custody, and he must be discharged.

Writ of *habeas corpus* allowed, and petitioner discharged.

FURMAN, PRESIDING JUDGE, and OWEN, JUDGE, concur.