## SAM COLE v. STATE.

No. A-2673.   Opinion Filed August 27, 1917.

(166 Pac. 1115.)

1.  **ADULTERY—Attempt to Commit.** Mere solicitation to commit adultery cannot be prosecuted under the law as an attempt to commit adultery.

2.  **SAME—Information—Sufficiency.** An information which charges only a solicitation to commit adultery does not state facts sufficient to constitute a public offense under the attempt statute.

3   **SAME.** For an information **held** insufficient, a general discussion of the principles involved, and a review of authorities, see opinion.

*Appeal from District Court, Haskell County;*
*W. H. Brown, Judge.*

Sam Cole was convicted on a charge of attempt to commit adultery, and appeals.   Reversed.

*A. L. Beckett,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Sam Cole, was convicted in the district court of Haskell county on a charge of attempt to commit adultery. The appeal is brought to this court, seeking a reversal of the judgment of conviction.

A consideration of the first assignment of error disposes of this case. This assignment is based upon the proposition that the information fails to state facts sufficient to constitute a public offense. The information, omitting formal parts, is as follows:

"That Sam Cole did, in Haskell county, State of Oklahoma, on or about the 5th day of August, in the year of our Lord one thousand nine hundred and fifteen, and anterior to the presentment hereof, commit the crime of attempt to commit adultery in the manner and form as follows, to wit: The defendant, Sam Cole, did then and there, unlawfully, willfully, and feloniously intend then and there to have carnal knowledge of the body of Vina Green, the lawful wife then and there of E. L. Green, who was then alive, and the said Sam Cole, in pursuance of said unlawful, willful and felonious intent by direction, invitation by word of mouth, and by laying on of hands by the said Sam Cole upon the person of the said Vina Green, did solicit and incite and endeavor to persuade the said Vina Green to then and there have intercourse with him, the said Sam Cole, no other persons being then and there present; he, the said Sam Cole, being then and there at the home of the said Vina Green, in the absence of the family of the said Vina Green, and he, the said Sam Cole, being then and there the husband of one certain person other than the said Vina Green, to wit, Mrs. Sam Cole, whose given name is to the county attorney unknown— contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

An exhaustive research has disclosed no cases directly in point which support the validity of this information.

The information charges only solicitation. It naturally follows, then, that no public offense is stated, unless the solicitation of a woman to commit adultery amounts to an attempt to commit adultery. The facts disclosed by the record support only the allegations of the information, but do not disclose a stronger case. In *Ex parte Turner*, 3 Okla. Cr. 168, 104 Pac. 1071, this court discussed an attempt to commit a crime, and among other things, after quoting authorities, said:

"Therefore the acts must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must be not merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made. *McDade v. People,* 29 Mich. 50; Bouv. Law Dict. 'Attempt.' It has been often held that the purchase of a gun with intent to commit murder, or the purchase of poison with the same intent, does not constitute an indictable offense, because the act done in either case is considered as only in the nature of a preliminary preparation, and as not advancing the conduct of the accused beyond the sphere of mere intent. 'To make the act an indictable attempt,' says Wharton, 'it must be a cause, as distinguished from a condition; and it must go so far that it would result in the crime, unless frustrated by extraneous circumstances.' 1 Whart. Crim. Law, par. 181. This principle is well illustrated by the case of *People v. Murray,* 14 Cal. 159. In that case the defendant was indicted for an attempt to contract an incestuous marriage with his niece. It was shown that, after declaring his intention to marry her, he actually eloped with her, and sent for a magistrate to perform the ceremony, and at the trial he was convicted; but on appeal the judgment was reversed, the appellate court holding that these were

mere preparations, and did not constitute an attempt, within the meaning of the statute. In delivering the unanimous opinion of the court, Field, C. J., said: "The evidence shows very clearly the intention of the defendant; but something more than the mere intention is necessary to constitute the offense charged. Between preparation for the attempt and the attempt itself there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement towards the commission after the preparations are made. To illustrate: A party may purchase and load a gun, with the declared intention to shoot his neighbor; but, until some movement is made to use the weapon upon the person of his intended victim, there is only preparation, and not an attempt. For the preparation he may be held to keep the peace, but he is not chargeable with any intent to kill. So, in the present case, the declarations and elopement and request for a magistrate were preparatory to the marriage; but until the officer was engaged, and the parties stood before him, ready to take the vows appropriate to the contract of marriage, it cannot be said in strictness (i. e., in a legal sense) that the attempt was made. The attempt contemplated by the statute must be manifested by acts which would end in the consummation of the particular offense but for the intervention of circumstances independent of the will of the party."

In *State v. Butler*, 8 Wash. 194, 35 Pac. 1093, 25 L. R. A. 434, 40 Am. St. Rep. 900, the identical question here under consideration was determined by the Supreme Court of Washington. The information considered by the Washington court is as follows:

"Comes now E. K. Pendergrast, prosecuting attorney for Douglas county, in the State of Washington, and by this, his information, as provided by law, charges one James Butler with the crime of attempting to commit adultery, in the following manner, to wit: He, the said

James Butler, on the 3d day of September, A. D. 1892, in the county of Douglas and State of Washington, did unlawfully, willfully, maliciously, and feloniously intend then and there to have carnal knowledge of the body of one Caroline Skett, the lawful wife then and there of one Julius Skett, who was then alive; and the said James Butler, in pursuance of the said unlawful, willful, malicious, and felonious intent, then and there falsely, wickedly, unlawfully, and maliciously, by means of promises of the payment of money and by direct invitation by word of mouth, and by laying on of hands by the said James Butler upon the person of the said Caroline Skett in a lewd and lascivious manner, and in the absence of all other persons, except the said James Butler and the said Caroline Skett, and by various other means, did solicit and incite and endeavor to persuade and procure the said Caroline Skett to have sexual intercourse then and there with him, the said James Butler, and the said James Butler was then and there the lawful husband of one certain person other than the said Caroline Skett, and whose true name is to said prosecuting attorney unknown. All of which is contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington."

The court, in discussing the proposition, said:

"The only question presented and argued by appellant is as to whether solicitation to commit adultery is an attempt to commit adultery. It is not contended that Caroline Skett was a consenting party, or willing to commit the act with the defendant. The information contains no such allegation, and the case stands as though she was an unwilling and resisting party. It is not contended that there was any act on the part of the defendant going to an attempting beyond soliciting the said Caroline Skett and endeavoring to obtain her consent. Is mere solicitation an attempt to commit adultery? It being impossible for one alone to commit adultery, as that requires the cooperation of two persons, it would seem to follow logically that one acting singly could not make an attempt. One

person could no more attempt to commit adultery than he could attempt to commit a riot, which, under our statutes, requires the participation of three or more persons. The instances given in the books where the solicitation of another to commit a crime is held to be an offense generally relate to those acts or crimes which can be performed or committed by one person, or where the solicitation to commit the crime is an offense in itself, as distinguished from an attempt. It is urged that a person may be convicted of adultery, or of an attempt to commit adultery, although not a direct participant in the act, by reason of aiding or abetting; but in such a case, where an attempt is charged against such third person, it should appear that there were two persons willing to commit the act of adultery, and that something was done in the way of an attempt. The cases upon this subject are very limited in number. The case of *State v. Avery,* 7 Conn. 266 [18 Am. Dec. 105], cited by counsel for appellant, which was decided in 1828, does not sustain his contention. That case was based upon a letter sent by the defendant to the wife of another man, containing words importing that she had acted libidinously towards the writer, and inviting her to an assignation for adulterous purposes, and it was held that the writing and sending of such letter was libelous. It was further said that it was immaterial to inquire whether the facts stated in the information amounted to a libel, or a solicitation to commit a greater crime, for if they constituted an indictable offense, within the jurisdiction of the superior court, it was sufficient for the purposes of that case. It was not decided that solicitation was an attempt to commit adultery. In *Smith v. Commonwealth,* 54 Pa. St. 209, decided in 1867, it was held that such solicitation did not amount to an attempt. A distinction has been sought to be drawn in this particular to the effect that solicitation to commit adultery is indictable as an attempt in those states where adultery is a felony, which was the case in the State of Connecticut, while in Pennsylvania adultery was but a misdemeanor. The distinction attempted to be drawn, it seems

to us, is not sound in principle. It is based on the ground that in trivial misdemeanors the law will look upon an attempt to commit them as not of sufficient gravity to justify or call for punishment. The decision of the case last cited, however, was not founded upon this distinction, although it recognizes the fact that such a one has been sometimes made, in citing *State v. Avery*. The court evidently entertained a different view. The opinion says: 'An attempt to commit a misdemeanor is a misdemeanor, whether the offense is created by statute or was an offense at common law. These were the words of Baron Parke, in the case of *Rex v. Roderick*, 7 C. & P. 795, delivered in the year 1837. They have been adopted by the compilers on criminal law. 1 Russ. on Crimes, 46; 1 Arch. Crim. Plead. & Ev. 19; Wharton's Crim. Law, 79, 873.' And apparently this had the sanction of the court. The reasons given in that case, showing why solicitation should not be held an attempt to commit adultery, apply with equal force whether adultery be a misdemeanor or a felony. These relate to the difficulty of determining what is a solicitation. 'What expressions of the face,' says the court, 'or double *entendres* of the tongue, are to be adjudged solicitations? What freedoms of manners amount to this crime? Is every cyprian who nods or winks to the married men she meets upon the sidewalk indictable for soliciting to adultery? And could the law safely undertake to decide what recognitions in the street were chaste and what were lewd? It would be a dangerous and difficult rule of criminal law to administer.' If adultery is a crime in this state, it is a felony; and if solicitation is an attempt to commit adultery, it is a criminal offense here. Section 303, Penal Code. It will be observed that this section makes no distinction between an attempt to commit a felony and an attempt to commit a misdemeanor, except as to the degree of punishment; and the distinction above mentioned could not be recognized here, even if adultery was but a misdemeanor under the statutes. It may be well to note, however, what some of the courts and law

writers have said relating to the subject under considera-tion. In the case of *Commonwealth v. Willard,* 22 Pick. [Mass.] 476, it was held that the purchaser of spirituous liquor sold in violation of the statute does not subject him-self to any penalty, either at common law, for inducing the seller to commit a misdemeanor, or under the statute. It was said in that case: 'It is difficult to draw any precise line of distinction between the cases in which the law holds it a misdemeanor to counsel, entice or induce another to commit a crime, and where it does not. In general, it has been considered as applying to cases of felony, though it has been held that it does not depend upon the mere legal and technical distinction between felony and misdemeanor. One consideration, however, is manifest in all the cases, and that is that the offense proposed to be committed, by the counsel, advice, or enticement of another, is of a high and aggravated character, tending to breaches of the peace or other great disorder and violence, being what are usually considered *mala in se,* or criminal in themselves, in contradistinction to *mala prohibita,* or acts otherwise indifferent than as they are restrained by positive law.' In the case of *Commonwealth v. Harrington,* 3 Pick. [Mass.] 26, it was held that the letting of a house for the purposes of prostitution, with the intent that it should be thus used, was an offense at the common law. The keep-ing of such a disorderly house was not a felony, but a mis-demeanor of a high and aggravated character, tending to general disorderly breaches of the peace, and a common nuisance to the community. There was no statute in Massachusetts relating to it.

"In Wharton, Crim. Law (9th Ed.) sec. 179, in speak-ing of solicitations, the author says: 'Are solicitations to commit crime independently indictable? They certainly are, as has been seen, when they in themselves involve a breach of the public peace, as in the case with challenges to fight and seditious addresses. They are also indictable when their object is interference with public justice, as where a resistance to the execution of a judicial writ is

counseled, or perjury is advised, or the escape of a prisoner encouraged.' 'But,' says the author, 'is a solicitation indictable when it is not either (1) a substantive indictable offense, as in the instances just named, or (2) a stage towards an independent consummated offense?' And he says, 'The better opinion is that, where the solicitation is not in itself a substantive offense, or where there has been no progress made towards the consummation of the independent offense attempted, the question whether the solicitation is by itself the subject of penal prosecution must be answered in the negative.' And he maintains that solicitation is not an attempt to commit adultery. In speaking of the subject further, he says: 'For we would be forced to admit, if we hold that solicitations to crminality are generally indictable, that the propagandists, even in conversation, of agrarian or communistic theories, are liable to criminal prosecutions; and hence the necessary freedom of speech and of the press would be greatly infringed. It would be hard, also, we must agree, if we maintain such general responsibility, to defend, in prosecutions for soliciting crime, the publishers of Byron's "Don Juan," of Rousseau's "Emile," or of Goethe's "Elective Affinities." Lord Chesterfield, in his letters to his son, directly advises the latter to form illicit connections with married women. Lord Chesterfield, on the reasoning here contested, would be indictable for solicitation to adultery. Undoubtedly, when such solicitations are so publicly and indecently made as to produce public scandal, they are indictable as nuisances or as libels. But to make bare solicitations or allurements indictable as attempts, not only unduly and perilously extends the scope of penal adjudication, but forces on the courts psychological questions which they are incompetent to decide, and a branch of business which would make them despots of every intellect in the land. What human judge can determine that there is such a necessary connection between one man's advice and another man's action as to make the former the cause of the latter? An attempt, as has been stated, is such an

intentional preliminary guilty act as will apparently result, in the usual course of natural events, if not hindered by extraneous causes, in the commission of a deliberate crime. But this cannot be affirmed of advice given to another, which advice such other person is at full liberty to accept or reject. Following such reasoning, several eminent European jurists have declined to regard solicitations as indictable, when there is interposed, between the bare solicitation on the one hand and the proposed illegal act on the other, the resisting will of another person, which other person refuses assent and co-operation.' In a somewhat later work, 1 Bishop, Crim. Law (7th Ed.) a partially contrary view is indorsed. This author goes farther. In section 768, he says: 'Though, to render a solicitation indictable, it is, as in other attempts, immaterial in general whether the thing proposed to be done is technically a felony or a misdemeanor, still, as the soliciting is the first step only in a gradation reaching to the consummation, the thing intended must, on principles already explained, be of a graver nature than if the step lay further in advance.' He is of the opinion that solicitation is an attempt to commit adultery as a necessary step or ingredient in the offense. Section 767.

"The question is a somewhat vexed one under the conflict of authorities relating to the various phases of the subject. The inquiry in this case is not whether solicitation to commit adultery is an offense in itself of a distinct character, but whether it is an offense because it is an attempt to commit adultery. The instances of such solicitation which have been brought to the attention of the courts are but few indeed, extending over a long period of years, but resort can be had to some of a kindred nature, or perhaps, more properly, which have a bearing on some of the principles involved. In the case of *Rex v. Butler*, 6 Car. & P. 368, decided in 1834, sometimes cited, it was said: 'An attempt to commit a misdemeanor created by statute is a misdemeanor itself,' citing *Rex v. Harris*, 6 Car. & P. 129. In *Shannon v. Commonwealth*, 14 Pa. 226, it was

held that a conspiracy to commit adultery was not an offense. And in *Miles v. State,* 58 Ala. 390, a similar decision was arrived at. Adultery was but a misdemeanor, however, in that state also, though it is not apparent that any importance was attached to this fact in either of these cases. In *Cox v. People,* 82 Ill. 191, it was held that solicitation to commit incest was not an attempt to commit the crime of incest, which was a felony. We have not failed to note the criticism of this case, and the citation it relies on from Wharton's Criminal Law, above quoted by Mr. Bishop in his valuable work. But the case also relies on *Smith v. Commonwealth,* and *Commonwealth v. Willard, supra,* and these cases are authority as we view them, with other authorities herein cited, on the ground that the distinction mentioned sometimes drawn between attempts to commit felonies and attempts to commit misdemeanors, or between attempts to commit grave as distinguished from trivial misdemeanors, is not a well established one, nor well founded when viewed merely as an attempt, and not as a substantive offense. Now it seems to us that solicitation to commit adultery is no part of the act of adultery itself, and consequently cannot be held to be an attempt. What is it? It involves the expression of a desire and a willingness on the part of one person to commit the act of adultery with another, and an attempt to get that person's consent, but no more. Follow it a step further. Suppose the consent of the other person is obtained, and in pursuance of it, if there is no immediate opportunity to gratify the then mutual desire, a conspiracy is entered into to commit the offense between these persons, which involves the expressed consent and agreement of both of them, and some understanding between them as to when and where the offense shall be committed, and the naming of a propitious time and place to commit it. It seems that this would be much more in the way of an attempt than the case presented here, and if that does not amount to an offense or an attempt, how can it be said that such an intention and willingness, coupled with solicitation upon the

part of one person only, can amount to an attempt to commit the offense."

We have quoted at great length from the opinion of the Supreme Court of Washington, because it reviews the authorities which have been called to our attention, and because the discussion of this question and the determination of it by that court appears by every reasonable canon of construction to be the only sound solution of the proposition.

The plaintiff in error could have been prosecuted for assault and battery, or under the statute penalizing indecent conduct, but could not be prosecuted for an attempt to commit adultery. As said by the Supreme Court of Pennsylvania, in *Smith v. Com.*, 54. Pa. 209, 93 Am. Dec. 686:

"It is easy to say that solicitation is an attempt, but a study of the cases will show that every case of attempt has included something more than a mere solicitation, and the slightest reflection will persuade any observant man that a rule of law which should make mere solicitation to fornication or adultery indictable would be an impracticable rule—one that in the present usages and manners of society would lead to great abuses and oppressions. The morality of the law cannot undertake to regulate the thoughts and intents of the heart. The best it can do is to punish open acts of lewdness and repress indecent assaults. For the rest, it must trust the people to the refining influences of Christian education. * * * In a high moral sense, it may be true that solicitation is attempt, but in a legal sense it is not. And the law is as likely to be distorted by pressing it into extravagant reforms of the manners of men and women as it is by too loose an administration."

We conclude, from a careful consideration of the authorities and upon principle, that the doctrine in *State*

*v. Butler, supra,* is to be approved as the proper determination of this proposition. It follows, therefore, that the information in the case at bar does not state facts sufficient to constitute a public offense, nor does the evidence establish the crime of attempt to commit adultery. The demurrer should have been sustained.

The judgment is reversed, and the cause remanded, with directions to the trial court to sustain the demurrer and discharge the plaintiff in error on this charge.

DOYLE, P. J., and MATSON, J., concur.