## GARR NICHOLS v. STATE.

No. A-7284. Opinion Filed May 2, 1930.
Rehearing Denied May 17, 1930.
(287 Pac. 1106.)

Mauntel & Spellman, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, Garr Nichols, hereinafter called defendant, was convicted in the district court of Woods county of the crime of attempted larceny of live stock, and his punishment fixed at imprisonment in the state penitentiary for two and one-half years.

The evidence of the state shows that defendant on or about the 8th day of July, 1928, attempted to steal certain calves, the property of Martin Sebits, which calves were located in a pasture near the town of Waynoka in Woods county; that defendant prepared to steal these calves by purchasing a lariat rope with which to rope them, and committed the overt act toward carrying his intention into effect by going to the pasture, capturing four of the calves and tying three of them to trees in the pasture, and putting one of the calves in a temporary corral which had been built around some trees in the pasture in a very secluded spot.

The evidence of the state further shows that defendant was familiar with the pasture, having been employed by Sebits at different times; that defendant knew how to handle a lariat rope, and that defendant was thoroughly familiar with the pasture and all the property kept therein; that defendant was seen by some boys, Sunday afternoon before his arrest, driving in his car near where the calves were concealed.   The curiosity of the boys being aroused, they went to the place where they had seen defendant, and, finding three calves tied to trees and one

calf in the small corral, they reported these facts, and an investigation resulted in the arrest of defendant a few days later.

The defendant did not take the witness stand, but offered evidence of his previous good character and certain other evidence to contradict the evidence of the state. His counsel argued that the facts proven by the state only showed at most a preparation for the act, and that if any crime had been contemplated it had been abandoned.

The defendant first contends that the court erred in overruling the motion of defendant for a new trial on the ground of newly discovered evidence. This assignment of error is based on what counsel contend to be the misleading effect of the evidence introduced at the trial as to the dimensions of two certain pieces of lariat rope; one piece introduced as an exhibit on the part of the state and another piece introduced as an exhibit on the part of the defendant. The evidence of the state was that about two days before these calves were found tied up in the Sebits pasture that defendant purchased from a merchant in Waynoka forty-eight feet of seven-sixteenths lariat rope, and that the rope found on these calves, while cut in three pieces, measured a total length of 48 feet, and the merchant from whom the defendant purchased this rope identified the rope introduced by the state as the same make and dimension of rope that he had sold the defendant.

The evidence on the part of defendant was that on the very day the calves were discovered to be tied up with certain rope, that they saw a piece of new lariat rope at the filling station of defendant's father. The purpose of this evidence being to show that the rope which defendant purchased two days before from the Waynoka merchant

could not have been the rope tied to the calves because that rope was in defendant's father's filling station at Waynoka too late for defendant to have used it.

At the trial defendant's father took the witness stand in defendant's behalf and produced a new piece of lariat rope, forty-eight feet in length, which he claimed was the rope that was in the filling station on this particular Sunday. On rebuttal the state called Mr. McGurn, the man who had sold defendant this particular rope that he had previously identified, and McGurn testified that the rope defendant introduced was a heavier rope and of larger dimension than the one he had sold defendant. The alleged newly discovered evidence is to the effect that after the trial the defendant had these two pieces of rope measured, with the result that McGurn was mistaken in testifying as to the dimension of this rope, and that the measurement of the rope introduced by this defendant was of the same dimension that McGurn testified he had sold this defendant. The purpose of this newly discovered evidence was primarily to impeach the testimony of McGurn by showing that he was mistaken as to the rope he had sold defendant, and to render his evidence less credible before the jury.

Motions for a new trial on account of newly discovered evidence are addressed to the discretion of the trial judge, and his action will never be disturbed by this court unless a manifest abuse of discretion appears. Further, this court has repeatedly held that a new trial on the ground of newly discovered evidence will never be granted, unless it appears from the application that defendant has exhibited due diligence to procure the evidence at the trial.

In the case at bar both pieces of rope were in the courtroom at the trial. They were available to defendant and his counsel for the purposes of measurement at that time,

and could have been as easily measured in court as out of court, and before the trial was concluded as well as after it was concluded. At the close of the trial, and as the jury were about to be taken to the jury room, they requested permission of the court to take the exhibits of rope to the jury room with them. This the court refused to permit, but did permit the jurors to make an inspection of the ropes in the courtroom in the presence of court and counsel, and thus defendant's counsel's attention was particularly called to the importance of the rope in the minds of the jury. There is no showing of diligence to procure the measurement of the rope. If the defendant desired to measure the rope or have it measured, a request should have been made to the court that they be granted opportunity to make the measurements before the close of the trial. Again this evidence would merely have been contradictory of a witness who had previously testified, and the showing, if made, would have been cumulative of defendant's testimony. The court therefore did not err in overruling the motion for a new trial.

The defendant next contends that the court erred in refusing to direct a verdict of not guilty and in overruling his demurrer to the state's evidence. The defendant was charged with the crime of attempted larceny of live stock. An attempt to commit a crime consists of three elements: (1) The attempt to commit the crime, (2) performance of some act toward the commission of the crime, (3) the failure to consummate its commission. State v. Thomason, 23 Okla. Cr. 104, 212 Pac. 1026; Ex parte Turner, 3 Okla. Cr. 173, 104 Pac. 1071.

In order that there may be an attempt to commit a crime, either statutory or at common law, there must be some overt act in part execution of the intent to commit the crime, but which falls short of the completed crime;

the difference between attempt and commission being that the act or step fails to produce the result intended. No definite rule applicable to all cases can be laid down as to what constitutes an overt act or acts tending to accomplish a particular crime. Each case must depend largely upon its particular facts and the inferences which the jury may reasonably draw therefrom. The accused must take at least one step beyond preparation, by doing something directly moving toward and bringing him nearer the crime he intends to commit. The act must be such as will apparently result in the usual and natural course of events, if not hindered by extraneous causes, in the commission of the crime itself. The act relied upon need not be an act which is ordinarily a part of the criminal transaction itself, but it may be one which, although somewhat remote, leads up to it.

In the case at bar the evidence shows that the acts consummated by the defendant constitute all the elements of an attempted offense, as defined above. (1) There is evidence of the intent to commit the crime. (2) There is evidence of the performance of the overt act toward the commission of the crime in going to the pasture, taking possession of these calves and tying part of them to the trees, and restraining another in the temporary corral, and (3) we have the failure of the defendant to complete the crime.

The defendant further complains of instruction No. 7. This instruction, when considered with all the other instructions in the case, correctly states the law as applicable to the facts.

Finally defendant contends that the county attorney was guilty of misconduct in his argument to the jury. There is no recital outside of what is contained in the ob-

jection itself to the effect that the county attorney or special prosecutor made the argument complained of. The trial court stated that he did not hear the argument that counsel for defendant contends was made. This court has repeatedly held that objections of this kind must be supported by recitals contained in the case-made, showing that the argument as complained of was in fact made.

In Payne et al. v. State, 21 Okla. Cr. 416, 209 Pac. 334, this court said

"Where the record is incomplete touching upon alleged disparaging remarks made in the closing argument, this court will presume that the trial court ruled correctly."

It appears from the record that defendant was accorded a fair trial, the evidence supports the verdict of the jury, and the errors complained of are not sufficient to require a reversal of the case.

For the reasons stated, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.