## WISENER, *Sheriff*, v. BURRELL.

No. 2251. Opinion Filed April 14, 1911.

(115 Pac. 275.)

HABEAS CORPUS—Discharge of Relator—Appeal. An appeal does not lie from an order in habeas corpus, discharging a party held for extradition for a criminal offense.

(Syllabus by the Court.)
Williams, J., dissenting.

*Error from Superior Court, Muskogee County; Farrar L. McCain, Judge.*

Application by Hugh A. Burrell for writ of *habeas corpus* to John L. Wisener, Sheriff. Relator discharged, and defendant brings error. Dismissed.

*E. G. McAdams,* for plaintiff in error.
*Kistler & Haskell,* for defendant in error.

DUNN, J. This case presents error from the superior court of Muskogee county. Defendant in error, being held for extradition for a criminal offense under a warrant in the hands of plaintiff in error, acting as sheriff in that county, secured his release by a writ of *habeas corpus* issued out of the said court. The sheriff has undertaken to bring the case here for review, to secure a reversal of the judgment discharging his prisoner.

Three questions of practice going to the jurisdiction of this court are presented by counsel for defendant in error which are: First, that decisions in *habeas corpus* are not reviewable on error or appeal; second, that the grounds upon which the defendant in error was held were criminal, and that therefore this case is a criminal case, and, if appeal lies, it is to the Criminal Court of Appeals, and not to this court; and, third, that the sheriff has no such interest as will entitle him to maintain an appeal.

Decisions from appellate courts all over the nation are cited by counsel for both parties to sustain and defeat these various

contentions, and an investigation of the authorities shows a sharp conflict among them; but a careful consideration of the reasoning of authorities dealing with the first proposition convinces us that the ground there taken is sound, and that in this state an appeal from a decision in *habeas corpus*, discharging a person held, as in the case at bar, does not lie. To support this view, attention is called to the following texts and authorities: Church on *Habeas Corpus* (2d Ed.) § 386; 2 Spelling on Extraordinary Relief, § 1355; *Knowlton v. Baker*, 72 Me. 202; *Mead v. Metcalf*, 7 Utah, 103, 25 Pac. 729; *In re Barker*, 56 Vt. 1; *State ex rel. v. Houston*, 30 La. Ann. (part 2) 1174; *In re Strickland & Alford*, 41 La. Ann. 324, 6 South. 577; *Ex parte Coston*, 23 Md. 271; *Howe v. State*, 9 Mo. 690; *Ferguson v. Ferguson et al.*, 36 Mo. 197; *Ex parte Jilz*, 64 Mo. 205, 27 Am. Rep. 218; *Hammond v. People ex rel. Vacaro*, 32 Ill. 446, 83 Am. Dec. 286; *Ex parte Thompson*, 93 Ill. 89; *Skinner v. Sedgbeer*, 8 Kan. App. 624, 56 Pac. 136; *People v. Conant*, 59 Mich. 565, 26 N. W. 768; *People v. Fairman*, 59 Mich. 568, 26 N. W. 769; *State v. Grottkau*, 73 Wis. 589, 41 N. W. 80, 1063, 9 Am. St. Rep. 816; *State v. Miller*, 97 N. C. 451, 1 S. E. 776; *In re Clasby*, 3 Utah, 183, 1 Pac. 852; *Wyeth v. Richardson*, 10 Gray (Mass.) 240; *Ex parte White*, 2 Cal. App. 726, 84 Pac. 242; *Ex parte Johnson*, 1 Okla. Cr. 414, 98 Pac. 461. See, also, note to case of *Bleakley v. Smart*, 74 Kan. 476, 87 Pac. 76, reported in 11 Am. & Eng. Ann. Cas., at page 129. The foregoing is by no means a complete list of the authorities in support of this proposition, as many additional ones appear in the note referred to and in the cases.

In the discussion of the case of *Ex parte Johnson, supra*, Judge Doyle, of the Criminal Court of Appeals of this state, takes note of the fact that no specific provision is made in the statute for appeals in this class of cases, and concludes that, had it been intended to provide for appeals, some proper provision would have been made. Discussing the same, he uses the following language:

"The courts of several states have held that the decisions in *habeas corpus* cases are not reviewable under a general law allow-

ing an appeal from all final judgments. See *Howe v. State,* 9 Mo. 690; *Ex parte Jilz,* 64 Mo. 205, 27 Am. Rep. 218; *Carruth v. Taylor,* 8 N. D. 166, 77 N. W. 617; *People v. Conant,* 59 Mich. 565, 26 N. W. 768. In some states the right of appeal has been expressly granted by legislative enactments; in other states the courts hold that a decision in a *habeas corpus* proceeding is appealable under a statute which gives an appeal from a final order affecting a substantial right, made in a special proceeding, See *State v. Buckham,* 29 Minn. 462, 13 N. W. 902, and *Winton v. Knott,* 7 S. D. 179, 63 N. W. 783. By virtue of a provision of section 21 of the 'Enabling Act' (Act June 16, 1908, c. 3335, 34 Stat. 277), all laws in force in the territory of Oklahoma at the time of the admission of Oklahoma as a state were extended over and put in force throughout the state, except as modified or changed by the 'Enabling Act,' or by the Constitution of the state. Thus the adoption of the *habeas corpus* statutes of the territory of Oklahoma was only so far as the same were not repugnant to, or in conflict with, the Constitution of the state. Had it been intended to provide for appeals in *habeas corpus,* some appropriate provision would have been made. Its omission affords the best evidence to the contrary, and, if anything is wanting to remove all doubt, it will be found in the nature and object of this great writ as a constitutional right; its purpose being to afford a speedy remedy to a party unjustly accused of the commission of a crime, without obstructing or delaying public justice, both of which appeals would be defeated by the delays consequent upon an appeal. Any other rule would operate practically to subvert the constitutional safeguards and the fundamental rights of the citizen."

And discussing the same question, Chief Justice Shaw, of the Supreme Judicial Court of Massachusetts, in the case of *Wyeth v. Richardson, supra,* says:

"The general principles of law are opposed to the allowance of exceptions in this case. The great purpose of the writ of *habeas corpus* is the immediate delivery of the party deprived of personal liberty. The allowance of exceptions would be inconsistent with the object of the writ. The consequence of allowing exceptions must be, either that all further proceedings be stayed, which would be wholly inconsistent with the purpose of the writ. * * * *"

To the same effect is the language of Chief Justice Smith,

of the Supreme Court of North Carolina, in the case of *State v. Miller, supra:*

"Proceedings under the writ of *habeas corpus,* which have for their principal object a release of a party from illegal restraint, must necessarily be summary and prompt, to be useful, and, if action could be arrested by an appeal, would lose many of their most beneficial results."

To the same point, Chipman, P. J., in the case of *Ex parte White, supra,* said:

"Having in mind the original purpose of the writ, it is difficult for us to perceive the wisdom or reason upon which statutes are based which allow an appeal in cases where the prisoner has been discharged, or that deny the right altogether of making a second application to any other. court when once remanded. The delay which might and generally would attend the appeal would in many cases work a denial of the very object of the writ, which is to secure the present discharge of the prisoner, and in most cases the value of this bulwark of personal liberty would be so impaired as to lose the distinctive character and office with which it has been clothed ever since King John met the Barons at Runnymeade in 1215, and instead of being the safeguard of human liberty, it might become a means of oppression."

One of the best-reasoned cases on this question is that of *In re Clasby, supra,* wherein the Supreme Court of Utah says:

"A person unlawfully imprisoned invokes the writ of *habeas corpus* with the expectation that an intelligent, conscientious discharge of judicial duty will restore to him his liberty. And upon the judge who hears and determines the cause rests an important responsibility, both to the prisoner and to the people. It is not to be presumed that a court or judge will hastily or without due consideration either remand the plaintiff into custody or discharge him from arrest. If the judge is of the opinion that the process by which the plaintiff is held is illegal, or that he is unlawfully restrained of his liberty, he is bound to release him from such unlawful restraint; and, upon an order discharging him, the prisoner is entitled to unrestrained liberty, unless the defendant, who holds him in custody, or the people, have the right of appeal, and the judge, or court, upon appeal being taken, has the right to order the prisoner into the custody from whence he came, until

the legality of such imprisonment is determined by the appellate court, in which case the writ is of no avail to the prisoner; if he is permitted to go at large pending the appeal, the appeal in most cases would be of no use to the people, for the reason that the plaintiff has absconded. The object of the writ is that the right to a discharge may in a summary manner be at once determined. If the people have a right to an appeal when the plaintiff is by order of the court or judge discharged, then in such case the writ falls far short of the purpose for which it was intended, and for the last two centuries has been used. Suppose, for a moment, the appeal to be well taken, and that this court should find that the court below erred in discharging the plaintiff, can this court issue a bench warrant for his rearrest, or direct the justice of the peace to again issue his warrant upon the same or original complaint for arrest of the person there charged with the commission of a criminal offense, for which he was arrested, imprisoned, and discharged from arrest by the district court. Or suppose, in the meantime, a grand jury have passed upon the facts involving the guilt or innocence of the plaintiff, and have refused to find an indictment, ought the plaintiff to be again arrested by an order of this court, and compelled to defend himself against an arrest made on such an order? It is easy to see that such proceedings would inevitably result in inextricable confusion; and if the discharge of the applicant upon a writ of *habeas corpus*, before a court or judge having jurisdiction, is an order or judgment from which an appeal can be taken to this court, necessarily attended with unavoidable delay, the value of this great writ as a safeguard of personal liberty is at least greatly impaired, if it is not changed into a means of oppression."

Little, if anything, can be added to the force of the logic and reasoning contained in the foregoing cases. It is to be noted, also, that our Constitution on this subject is as broad as it may well be. Section 10 of article 2, commonly known as the "Bill of Rights," provides in broad and comprehensive terms that "the privilege of the writ of *habeas corpus* shall never be suspended by the authorities of this state." It is to be noted that the language of the Constitution is not merely that the writ of *habeas corpus* shall never be suspended, but it is the *privilege* of the writ which is never to be suspended. "Privilege," according to Webster (Web-

ster's New International Dictionary), means "special enjoyment of a good, or exemption from an evil or burden," etc. "Suspended" is defined as "temporarily inactive or inoperative; held in abeyance."

Undoubtedly courts, sheriffs, and other public officers of the state are authorities thereof, and if a party invoking the privilege of this writ may be reincarcerated by a sheriff, or other officer, on the order of a court or judge of the state, pending an appeal, then unquestionably his privilege under the operation of the writ would not only be suspended, but virtually destroyed and denied. So jealous have the people been of an opportunity being afforded every citizen for a speedy determination of the righteousness of his incarceration, that they have placed the power to adjudicate that question in every court of record and judge thereof in the state. Even the county court and its judge is vested with a limited jurisdiction to issue this writ.

Hence the contention of counsel for defendant in error must be sustained, and the appeal is accordingly dismissed. This conclusion renders the discussion of the other questions unnecessary.

TURNER, C. J., and HAYES and KANE, JJ., concur: WILLIAMS, J., dissents.