## IN THE MATTER OF THE APPLICATION OF DANIEL SULLIVAN FOR A WRIT OF HABEAS CORPUS

No. 3514

February 2, 1948. 189 P.2d 338.

*Alan Bible,* Attorney General, *Geo. P. Annand* and *Homer Mooney,* Deputy Attorneys General, and *C. J. McFadden,* District Attorney of White Pine County, for Appellant.

*Gray & Horton,* of Ely, and *Wm. J. Cashill,* of Reno, for Respondent.

## OPINION

By the Court, HORSEY, J.:

This purports to be an appeal by Thomas J. McLaughlin, as sheriff of the county of White Pine, State of Nevada, from an order of the presiding judge of the Seventh Judicial District Court of the State of Nevada, in and for the County of White Pine, discharging one Daniel Sullivan from the custody of said sheriff, after a hearing duly had upon a writ of habeas corpus issued out of said court. The appeal also purports to be from an order of said court denying the said sheriff a new trial.

The said Daniel Sullivan, at the time of the issuance of said writ of habeas corpus, and of the making of said order of discharge, was being held by the said sheriff,

after the said Sullivan had been arrested pursuant to an extradition warrant issued by the Governor of the State of Nevada upon the requisition of the Governor of the State of Michigan, for the return of the said Sullivan to the County of Macomb, in said last-mentioned state, to answer for a crime alleged to have been committed there by the said Sullivan.

The respondent in this proceeding, Daniel Sullivan, has moved this court to dismiss the appeal of the said sheriff, and the question now before this court is whether, under the Constitution and laws of the State of Nevada, an appeal to this court lies to review an order of a district court, or judge, in a habeas corpus proceeding, either discharging a prisoner, or refusing to discharge him and dismissing his petition.

Our Habeas Corpus Act, N.C.L.1929, vol. 5, secs. 11375–11414, contains no provision conferring the right of appeal, either upon the petitioner for the writ, or upon the respondent to whom it is directed. Neither our Constitution, nor our statutes, contain any express provision for appeal in habeas corpus cases.

The question, then, more precisely stated, is whether, in the absence of a constitutional or statutory provision expressly conferring the right of appeal, an appeal will lie in a habeas corpus proceeding at the instance of either the prisoner being held in custody on a criminal charge, or, on the other hand, on behalf of the officer, or the state, resisting his discharge, from an order denying the discharge of the prisoner, or from an order discharging him.

Upon this important question, as upon many others in the realm of jurisprudence, we find the authorities in irreconcilable conflict.

■ The very great weight of authority, however, is to the effect that, in the absence of express statutory authorization, no appeal will lie to the supreme court from such an order or judgment of the lower court, or judge, in a habeas corpus proceeding, where the party

being deprived of his liberty is held upon criminal process. This is also the rule at common law. 2 Am.Jur. 922, sec. 122, and the cases cited in support of the text; Edmonson v. Ramsey, 122 Miss. 450, 84 So. 455, 10 A.L.R. 385; Baird v. Nagel, 194 Ind. 87, 142 N.E. 9, 30 A.L.R. 1322, and the many cases cited and discussed in the notes; see, also, 29 C.J., p. 183, and the cases cited in footnote 14; 39 C.J.S., Habeas Corpus, sec. 109.

The courts of a few states have taken the opposite view, notably the Supreme Courts of Kansas, Wisconsin (in the earlier cases—they have now a statute conferring the right of appeal on either party), Utah, South Dakota and Washington. The principal Kansas case on the question appears to be Miller v. Gordon, 93 Kan. 382, 144 p. 274, Ann.Cas.1916D, 502, which overruled the earlier case of Cook v. Wyatt, 60 Kan. 535, 57 P. 130.

In State ex rel. Durner v. Huegin, 110 Wis. 189, 85 N.W. 1046, 62 L.R.A. 700, the opinion is ably prepared and deals exhaustively with other questions, but same is of slight importance upon the question of the right of appeal in habeas corpus proceedings in the absence of statute, as Wisconsin had theretofore enacted their statute, Statutes of Wisconsin, 1898, sec. 3043, conferring upon either party the right of review by a writ of error. State ex rel. Durner v. Huegin, however, "set out with seeming approval" (10 A.L.R. p. 392) the earlier case of State ex rel. McCaslin v. Smith, 65 Wis. 93, 26 N.W. 258. In the latter case, on pages 258, 259 of 26 N.W., it is stated:

"The counsel for the defendant in error, while not admitting that a writ of error lies to review this decision of the circuit court, declined to argue the question of practice. The assistant attorney general, however, discussed the question, claiming that a review of the decision may be had in that manner. He insists that the decision of the circuit court affirming the order of the commissioner is in the nature of a final judgment, which may be reviewed by the court on writ of error. In

numerous cases this court has reviewed proceedings on habeas corpus had before commissioners or a judge at chambers on certiorari, but the precise question now presented has not been decided. There is no express provision made by statute for reviewing such a decision of the circuit court, but we are inclined to hold that it may be had on a writ of error. The order made in such a proceeding by the court is in the nature of a final judgment, and the policy of our constitution and laws is to allow a review of such an adjudication; and it is most in accord with our rules of practice and the analogies of the law to allow this to be done on writ of error. So far as the dicta of our decisions bear upon the point, they favor that practice. See In re Crow, 60 Wis. 349, 19 N.W. 713. It is true there is much authority for holding that a review of a decision on habeas corpus cannot be had by writ of error without a statute authorizing it, and the reason given is that the decision is not in the nature of a final judgment. But there is also much authority the other way. See Yates v. People, 6 Johns., N.Y., 337; Ableman v. Booth, 21 How. 506 [16 L.Ed. 169]; and cases cited by Mr. Justice Breese in his dissenting opinion in Hammond v. People, 32 Ill. 446–457, 83 Am.Dec. 286. But we shall not further discuss the question, but sustain the writ."

In Utah, the earlier cases of In re Clasby, 3 Utah 183, 1 P. 852, and Mead v. Metcalf, 7 Utah 103, 25 P. 729, set forth, ably and clearly, strong reasons why at least appeal by the state or by the officer detaining the prisoner should not be sanctioned. The Clasby case is quoted from at length in the note in 10 A.L.R. pages 393, 394. That case is also referred to in Wisener v. Burrell, 28 Okl. 546, 118 p. 999, on page 1000, 39 L.R.A., N.S., 755, Ann.Cas. 1912D, 356, on page 358 of the latter, as "one of the best-reasoned cases on this question," and the opinion is extensively quoted.

We will now quote from the other of the earlier Utah

cases, Mead v. Metcalf, supra. The opinion in that case, 25 P. 729, 730, is, in part, as follows:

"Upon such a hearing the guilt or innocence of the prisoner of the crime charged, or of the right to reimprison him in consequence of it, cannot be finally determined. The order of his discharge simply releases him from the particular restraint to which he is subjected. Such a decision cannot convict him or acquit him of the crime, or determine his imprisonment in consequence of it. It is not final. Section 9 of the Organic Act of Utah Territory, provides that 'writs of error, bills of exceptions, and appeal shall be allowed in all cases from the final decision of said district courts to the supreme court under such regulations as may be prescribed by law.' And section 3635, vol. 2, Comp. Laws Utah 1888, provides that 'an appeal may be taken to the supreme court from the district court from all final judgments in an action or special proceeding,' etc. And section 5134 of the same volume provides that 'either party in a criminal action may appeal to the supreme court on questions of law alone.' The order from which the defendant attempted to appeal was not a final judgment within either of the provisions above quoted; nor did the order of discharge upon the hearing upon the writ of habeas corpus involve a question of law only; nor do we think an appeal from such an order within any special provision of the statute. In some of the states the decision of the court upon such a hearing may be reviewed at the instance of the state when the prisoner is discharged, as well as at the instance of the prisoner when he is remanded. In others the appeal is allowed only at the instance of the prisoner when he is remanded, or when the writ is denied. The right of appeal does not exist in either case without statutory authority. To entangle the proceeding by writ of habeas corpus with an appeal would deprive it of its efficacy as a simple and speedy remedy for the wrongs for which it was

designed. In many cases an appeal would be an idle process unless the prisoner could be held during its pendency; and, if so held, this beneficent and time-honored writ in all such cases would be thereby deprived of its efficacy as a means of swift relief from oppression by unlawful imprisonment. In the case of In re Clasby, 3 Utah 183, 1 P. 852, the court held that neither the defendant named in the writ nor the people have the right to an appeal from an order discharging a person upon a hearing upon a writ of habeas corpus. To the same effect are People v. Schuster, 40 Cal. 627; Wyeth v. Richardson, 10 Gray, Mass., 240. We are of the opinion that an appeal does not lie to this court from an order of the district court discharging a person from arrest upon a writ of habeas corpus. The motion of the respondent to dismiss the appeal for want of jurisdiction in this court to hear it is allowed. Appeal dismissed."

But both In re Clasby, supra, and Mead v. Metcalf, supra, are expressly overruled in the subsequent case of Winnovich v. Emery, 33 Utah 345, 93 P. 988.

In the opinion in the latter case, after treating at length the question of the finality of a judgment in a habeas corpus proceeding, as to whether it is within the purview of the Utah statutes as to appeals, and disagreeing with In re Clasby, supra, and Mead v. Metcalf, supra, upon that question, Mr. Justice Frick, on page 991 of 93 P., stated:

"It is argued that, although the language of a constitutional provision or a statute be such as would authorize or confer the right of appeal generally, in view that the policy of the law with regard to appeals in habeas corpus proceedings is opposed to the exercise of the right, therefore appeals in such proceedings should not be permitted by the courts under general provisions, but only when the right to an appeal is given by a special statute or by constitutional provision. This argument is based upon the theory that to permit appeals in

habeas corpus proceedings destroys the effectiveness of the remedy; that it may delay the party in obtaining his liberty, the very thing that by habeas corpus was intended to be speedily restored to him. It is urged that, if appeals are permitted, then the judgment of the court discharging the prisoner must be suspended, and the very purpose of the writ is defeated. This argument or conclusion, to our minds, assumes that to follow which does not follow. Without an express statutory provision to that effect an appeal does not of its own force suspend the judgment in a habeas corpus proceeding. 21 Cyc. pp. 338–341. Even in those states where an express right of an appeal is given by statute, the courts have held that the taking of an appeal does not suspend the judgment. State v. Kirkpatrick, 54 Iowa 373, 6 N.W. 588.

"But this question is not involved in this case, and we therefore express no opinion upon it, except to suggest that such a result does not necessarily follow from the allowance of an appeal, and therefore that it is not a conclusive reason or argument against the allowance of appeals in such proceedings."

This reasoning is directly contrary to that of not only the earlier Utah cases above mentioned, but also to that employed in the many cases of other states supporting the majority rule.

If the prisoner were released on habeas corpus, and the state or the arresting officer appealed, and the prisoner were permitted to remain at liberty, the result would be as pointed out in Mead v. Metcalf, supra—"in many cases an appeal would be an idle process unless the prisoner could be held during its pendency." This referred to an appeal by the state, or the public officer acting for the state. And to hold the prisoner pending the appeal, if he had been ordered discharged, meaning his rearrest and reincarceration or admission to bail would be, thereby, in effect, suspending the operation of the order of discharge.

■ The learned Justice's assertion in his opinion (on page 992 of 93 P.), referring to the right of appeal, that "it in no way retards the speedy determination of the application," we find it difficult to support, in the light of experience. It is widely known that appeals, requiring the preparation of the record on appeal, briefs, and time for hearing, which must necessarily depend upon the condition of business in the appellate court, and involving consideration by such court after such proceeding has been reached, arguments heard, and the case submitted, necessarily covers a considerable period of time—usually many months.

The statement of Zane, C. J., in Mead v. Metcalf, supra, above quoted, that "to entangle the proceeding by a writ of habeas corpus with an appeal would deprive it of its efficacy as a simple and speedy remedy for the wrongs for which it was designed," seems to the writer of this opinion to be the more sound and reasonable conception as to the effect of appeal in such cases.

California is one of the fifteen or more states which, in the absence of statute providing for appeal or writ of error in habeas corpus cases, follow the common-law rule to the effect that a judgment or order in a habeas corpus proceeding is not appealable.

Under the federal law, and that prevailing in many states, appeal or writ of error in habeas corpus cases is provided for by statute.

The condition of the California law as to the right of appeal or writ of error in such cases is of particular importance in the instant case, for the reason that the Nevada Habeas Corpus Act, entitled "An Act concerning the writ of habeas corpus, approved December 19, 1862," same being N.C.L.1929, Vol. 5, Secs. 11375–11414, consists of provisions adopted almost verbatim from like provisions of the California Habeas Corpus Act, enacted in 1850. See In the Matter of Perkins, 2 Cal. 424.

■ It is a well-settled rule of statutory construction frequently heretofore adhered to by this court, that

when the legislature of a state adopts and makes part of its laws a statute of another state, the legislature of the adopting state is presumed to have intended to adopt, not only the letter of the law or statute adopted, but also the construction placed upon such statute by the highest court of the state from which it was adopted. See Ex parte Skaug, 63 Nev. 101, 164 P.2d 743, and, particularly, the many Nevada cases cited, on page 108 of 63 Nev., and page 746 of 164 P.2d, in support of such rule.

The Nevada Habeas Corpus Act was enacted, as appears from its title above stated, December 19, 1862.

The only California case decided by the Supreme Court of that state, interpreting their said act, prior to the adoption of the provisions of that act by our Legislature in 1862, was a case entitled In the Matter of Perkins, supra, a proceeding in habeas corpus, decided by the Supreme Court of California in the October Term, 1852. The decision was unanimous. Two opinions were written—one by Mr. Chief Justice Murray, and a concurring opinion by Mr. Justice Anderson. In the principal opinion it is stated, on page 430 of 2 Cal.:

"The act concerning 'writs of habeas corpus,' passed April 20, 1850, has vested the power of hearing and determining writs of habeas corpus in the judge of every court of record in the state; it is a mere chamber proceeding, a summary mode of determining whether a party be properly held in custody. The final determination is not that of a court, but the simple order of a judge, and is not appealable from or subject to review. The doctrine of res adjudicata cannot apply to such determinations.  * * *"

█ Under the r u l e hereinbefore mentioned, the Nevada Legislature, when, in 1862, the provisions of the California Habeas Corpus Act were adopted, was presumed to have adopted the act as thus construed by the Supreme Court of California. That court having held that there was no right of appeal, or review, in habeas

corpus cases, and the act having been presumably adopted as so construed, there was not, upon adoption of the act, thereby conferred any right of appeal, or review, in Nevada, and no such right has ever been since conferred by the legislature of this state, either by amendment of the original act, or otherwise. The reasons for the construction of the California supreme court in the Perkins case, supra, are readily apparent from the opinion of Mr. Chief Justice Murray, above quoted. The conception of that court was that the determination, which might be by a single justice or judge in a proceeding more or less informal, and which did not preclude subsequent applications to the same judge, or to other judges or justices, did not possess the finality or dignity of a formal judgment of a court of record, and that same was not res adjudicata. And the Nevada legislature, upon adopting that law from California, is, under the rule, presumed to have adopted that conception or interpretation.

There have been numerous decisions by the district courts of appeal and the Supreme Court of California since the Perkins case, supra, as to the right of appeal in habeas corpus cases. They are cited and extensively treated in 13 Cal.Jur., p. 284, sec. 59, which is as follows:

"The supreme court, district courts of appeal and the superior court all have original jurisdiction for the purpose of granting writs of habeas corpus, and in the exercise of this power they stand upon an equal plane. It has long been the settled rule that no appeal will lie from a judgment of a lower court granting or refusing to grant a writ, nor can an erroneous judgment in this respect be annulled on certiorari. The constitutional amendments conferring jurisdiction upon the district courts of appeal did not have the effect of changing this rule. The supreme court after the decision of a district court of appeal in a habeas corpus proceeding has no power to transfer such proceeding to the supreme court

for a hearing therein; and the constitutional provision for the transfer of a case to the supreme court when the justices of the district court of appeal are unable to agree has no application to proceedings for the issuance of the writ; nor has the court which renders a judgment in such a proceeding power to grant a rehearing therein."

Some of the California cases decided since the Perkins case was decided in 1852, and since our Nevada Habeas Corpus Act was adopted in 1862, are: Matter of Ring, 1865, 28 Cal. 247; People v. Schuster, 1871, 40 Cal. 627; Ex parte White, 1906, 2 Cal.App. 726, 84 P. 242; In Matter of Hughes, 1911, 159 Cal. 360, 113 P. 684; Ex parte Zany, 1913, 164 Cal. 724, 130 P. 710; France v. Superior Court, et al., 1927, 201 Cal. 122, 255 P. 815, 52 A.L.R. 869.

The opinion by Mr. Presiding Justice Chipman in Ex parte White, supra, is enlightening and instructive. After quoting from In re Perkins, 2 Cal. 424, the portion of the opinion which is hereinbefore quoted, and after reviewing other earlier cases, the learned Presiding Justice then, on page 243 of 84 P., stated:

"It is perhaps not far from the truth that the concensus of opinion of the bar and bench of this state has, for a third of a century, been that there was no appeal allowable from an order *either granting or refusing* a discharge on habeas corpus and the practice has conformed to that view of the law." (Italics added.)

The latter portion of the same opinion, on page 244 of 84 P., is as follows:

"In Re Begerow, 136 Cal. 293, 68 P. 773, 56 L.R.A. 528, it was said: 'The petitioner's formal discharge upon habeas corpus was determinative therefore of but two things: (1) That the pending prosecution against him must be dismissed; and (2) that because of said dismissal he was entitled to his present liberty.' In that case, Begerow applied for a dismissal of the action under subdivision 2 of section 1382, Pen.Code, and was

refused. Subsequently, he was discharged upon a writ sued out before the Supreme Court. He was rearrested upon a warrant based upon a complaint charging him with the same crime as that for which he had been previously arrested. He again applied for a writ to the supreme court, contending that his discharge upon the former hearing estopped the state from the right to further prosecute him for the alleged crime. The court in the opinion referred both to sections 1487 and 1496 of the Penal Code as showing that the discharge under the writ was not a bar to further prosecution on another information or indictment for the same offense. This being true, the judgment or order of discharge cannot be held to constitute such final judgment as would be appealable under any provision of the Code of Civil Procedure, and it is not claimed that any provision is elsewhere found, either in the habeas corpus act or in the provisions of the Penal Code for appeal from such order or judgment. We are aware that in some jurisdictions it has been held that an appeal may be taken or a writ of error sued out and the habeas corpus proceedings thus be reviewed. But in the great majority of cases this was allowable under statutory provision, and where not so directly the decisions were more or less affected by existing statutes. Independent of statutory provisions, the better doctrine is that a decision in habeas corpus is not of such conclusive character as to support a writ of error, and that no right of appeal exists. 9 Am. & Eng.Ency. of Law, p. 1072; Church on Habeas Corpus, sec. 386.

"Having in mind the original purpose of the writ, it is difficult for us to perceive the wisdom or reason upon which statutes are based which allow an appeal in cases where the prisoner has been discharged or that deny the right altogether of making a second application to any other court when once remanded. The delay which might and generally would attend the appeal would in many cases work a denial of the very object of the writ

which is to secure the present discharge of the prisoner, and in most cases the value of this bulwark of personal liberty would be so impaired as to lose the distinctive character and office with which it has been clothed ever since King John met the Barons at Runnymeade in 1215, and instead of being the safeguard of human liberty it might become a means of oppression."

In the case of Ex parte Zany, supra, the District Court of Appeal for the Third District, upon a habeas corpus hearing, ordered Zany discharged. After such decision, there was an attempted transfer of the proceedings, from such District Court of Appeal to the Supreme Court of California. Such application was denied. In the able opinion by Mr. Justice Angellotti, it is stated, on page 710 of 130 P.:

"It has always been the law in this state that the decision of any court in a habeas corpus proceeding, provided the court has jurisdiction, cannot be reviewed by any other court in any way. The right of appeal has never been given, and no other method for such review has ever been provided. We are speaking now without regard to the provisions of our Constitution relative to District Courts of Appeal, which we will consider later. The result has been that, with reference to such proceedings, the Supreme and superior courts, to each of which was given the power to issue writs of habeas corpus, stood upon the same plane; neither being inferior to the other in any other sense than that a superior court, in determining any such matter, would naturally follow a precedent established by the highest court in the state, if any such precedent had been established. It, however, had the *power* to disregard it; and its determination, whether in accord with the law as laid down by the Supreme Court or not, was an end of the particular proceeding, and in case of a discharge of the petitioner from custody was final and conclusive. Such is still the law with relation to the superior court of the state, as was recently decided by this court in

bank; Mr. Justice Shaw writing the opinion. See In re Hughes, 159 Cal. 360, 113 P. 684. Where a petitioner was remanded to custody by a superior court, and the proceeding instituted in that court was thus terminated, and was no longer a matter *pending therein,* he could inaugurate a *new proceeding* for relief in another court, and can still do so, but is now limited in the making of a new application, by statutory provision, to a higher court; either the District Court of Appeal having jurisdiction, or the Supreme Court. Such was the only remedy afforded by our law to the petitioner when remanded, and, as we have said, a discharge from custody by a superior court was final and conclusive."

That opinion makes clear that in California, even after the passage of the statute limiting a new original application (after hearing of the first application and remanding by a superior court) to hearing in a higher court—the District Court of Appeal or the Supreme Court—there was still no right of appeal, or review, vested in either party. The jurisdiction of the higher courts, in such cases, *was entirely original and never appellate.*

The California statute referred to in the same opinion is doubtless the amendment of section 1475, Penal Code, Stats. 1905, p. 706, c. 544, mentioned by Mr. Presiding Justice Chipman in Ex parte White, supra, and is set forth on page 243 of 84., P. as follows:

"If the writ has been granted by any superior court or judge, and after the hearing thereof the prisoner has been remanded, he shall not be discharged from custody *by the same or any other superior court or judge,* unless upon some ground not existing at the issuing of the prior writ, or unless upon some point of law not raised at the hearing upon the return of the prior writ." (Italics added.)

Thus it is clear that successive applications to the same or any other superior court or judge were pro-

hibited to one remanded by a superior court or judge upon a former application, with the exceptions stated, but such new original application could be made to the District Court of Appeal, or to the Supreme Court. There is, in such statute, no provision conferring any right of appeal whatever,—either to a petitioner if remanded, or to the state or officer if the petitioner has been discharged.

In France v. Superior Court, supra, the Supreme Court of California, in the opinion by Mr. Justice Curtis, on page 817 of 255 P., reaffirmed or reiterated the principles, enunciated in the earlier cases of that court, as to the absence of any right of appeal in habeas corpus cases, and the theory expounded in Ex parte Zany, supra, as to the equal standing of the courts and justices upon whom original jurisdiction had been conferred in habeas corpus proceedings.  This development of the California law as stated in Ex parte Zany, supra, expressed more clearly than the cases had theretofore the basis for the adoption of the holding of the absence of any right of appeal from a lower to a higher court, which since so decided in Re Perkins, supra, had been the law of California.  Such theory is recognized by Mr. Justice Curtis in the opinion in France v. Superior Court, supra, as the basis for such doctrine, for immediately after the sentence of his opinion containing the clause, "and 'generally speaking as far as the power to issue the writ is concerned the Supreme Court, the District Courts of Appeal, and the superior courts are upon the same plane' " (page 817 of 255 P.), he stated the logical sequence of such theory, as follows:

"By this is meant, however, as we understand these decisions, 'that the decision of any court in a habeas corpus proceeding, provided the court has jurisdiction, cannot be reviewed by any other court in any way,' Matter of Zany, supra, [164 Cal. at] page 726, 130 P. 710."

In Nevada, this court has heretofore had no occasion

to pass directly upon the question of the right of appeal to the supreme court from the determination of a district court or judge in a habeas corpus proceeding. The nearest approach to such question which this court has been called upon to consider was in the Eureka County Bank Habeas Corpus Cases, reported in 35 Nev., pages 80–151, 126 P. 655, 129 P. 308, in which the question involved was as to the right to a rehearing. This court, 35 Nev., on page 151, 129 P. 308, stated:

"Respondents have petitioned for a rehearing. The effect of granting a rehearing would be to suspend the former order discharging the petitioners. 3 Cyc. 219. This would subject petitioners to rearrest upon the very charges upon which they have been discharged in violation of section 29 of the habeas corpus act. Rev.Laws, sec. 6254. Under statutes like ours, the Supreme Court of California has held that there is no practice in that state allowing petitions for rehearing in cases of habeas corpus. Ex parte Robinson, 71 Cal. 608, 12 P. 794. Except where there is statutory provision therefor, an order discharging a prisoner has generally been held not subject to review. 21 Cyc. 335, et seq. It has been held that to allow a review of an order of another court made in a habeas corpus case is inconsistent with the object of the writ. Wyeth v. Richardson, 10 Gray, Mass. 240; Knowlton v. Banker, 72 Me. 202; State v. Miller, 97 N.C. 451, 1 S.E. 776; People v. Schuster, 40 Cal. 627; Grady v. Superior Court, 64 Cal. 155, 30 P. 613; In re Clasby, 3 Utah 183, 1 P. 852.

"The petition for a rehearing is denied."

It is apparent from the language of the court, in its per curiam opinion, that it reached the conclusion denying the rehearing upon certain definite principles, equally applicable to a rehearing and to a review by appeal or writ of error. The court mentioned, first, that "the effect of granting a rehearing would be to suspend the former order discharging the petitioners." This referred to the petition for rehearing by respond-

ent, the sheriff of Eureka County. The effect in the instant case, if the right of appeal were recognized, would be similar, except that the suspension would, in case of appeal, ordinarily be for a much longer time than in case of a rehearing.

The court next mentioned, as a further effect of granting a rehearing, that: "This would subject petitioners to rearrest upon the very charges upon which they have been discharged in violation of section 29 of the habeas corpus act." A similar result could ensue in the instant case, if the right of the state, or Sheriff McLaughlin, to appeal were allowed and the order of the district court reviewed. Indeed, rearrest of the respondents in the Eureka Bank Cases would have been justified if the attorney general and the sheriff had, in their discretion, deemed it necessary (to prevent the prisoners absconding), immediately upon the granting of a rehearing and the resulting suspension of the writ, without awaiting the result upon rehearing. So, in the instant case, re-arrest of the respondent during the pendency of the appeal, were the right of appeal accorded by this court, would depend upon the discretion of the officers. And the re-arrest, in the absence of the exceptional conditions mentioned in section 29 of the Habeas Corpus Act (and which are inapplicable to the situation in the instant case), would be in violation of said section.

Next, the court, in its said opinion, referred to California and the fact of the similarity of their statutes and ours, and stated that: "Under statutes like ours, the Supreme Court of California has held that there is no practice in that state allowing petitions for rehearing in cases of habeas corpus. Ex parte Robinson, 71 Cal. 608, 12 P. 794." Whilst the court did not specifically say that because Nevada had adopted the same provisions, in our Habeas Corpus Act, as those in the California Habeas Corpus Act, this court was bound to give effect to the holding of the Supreme Court of California

as to the practice in that state; nevertheless, this court followed such holding as to rehearing, and evidently was guided to its conclusion by such holding.

And then, apparently having in mind the primary objective and the nature of the writ, and the necessity for a speedy and final determination, the court uttered a broader statement, applicable to the right to rehearing then involved, but none the less sufficiently comprehensive to include any other legal method of review, such as appeal of a writ of error, said statement being: "Except where there is statutory provision therefor, an order discharging a prisoner has generally been held not subject to review. (21 Cyc. 335, et seq.)" By that statement, this court recognized a n d stated w i t h approval, the *general* holding, which had followed recognition of the nature, characteristics and objective of the writ, and that suspension, re-arrest and prolonged proceedings were entirely inconsistent with its fundamental nature and beneficent purpose. That statement of such general holding was the same as stating that the weight of authority holds that in the absence of statutory provision therefor an order so discharging is not subject to review, and by general practice such has become the rule. By applying that rule, this court reached its determination as to the petition for rehearing, the matter directly involved in the case then being decided. And the court, before making its order, stated, further: "It has been held that to allow a review of an order of another court made in a habeas corpus case is inconsistent with the object of the writ." Citing, among cases from other states, two of the earlier California cases—People v. Schuster, supra, and Grady v. Superior Court, 64 Cal. 155, 30 P. 613, and also the Utah case of In re Clasby, supra.

■ ■ Counsel for appellant have referred, in their brief, to the above statement as obiter dictum. We think it is more. It was stated to show that, generally, the authorities recognize, and sustain by their holdings,

the true conception of the fundamental nature and characteristics of the writ as the means of speedy and conclusive relief to one unlawfully deprived of his liberty. It was stated because clearly illustrative of the breadth of the rule against review in any of its various phases, and which rule this court was then about to apply. In the particular case then before the court, the application of the rule, or principle, denying the right of review, prevented rehearing, and led to the court's denial. The court, by such final sentence of its opinion, above quoted, merely stated a different and further application of the same rule, or principle, to demonstrate the wide scope of its applicability, and cited valuable authorities supporting such application, and, indirectly, the rule itself. Strictly interpreted, it was dictum, because there was no question of appeal or review of the order of *another court* then before this court; nevertheless, it illustrated the broad and practical applicability of the rule of various situations, in preserving the integrity of the nature and purposes of the writ, and, therefore, served to strengthen the basis or foundation upon which the court's application of the rule as to rehearings was predicated. We think, therefore, that, construed in the broader sense, such statement of the court was more than mere dictum.

We are, in the instant case, called upon to act upon the very situation to which the court then, by such last sentence, referred, namely, the right to review the order of another court in a habeas corpus proceeding. The rule or principle, and its basic reasons, then applied by the court to the situation then before it, namely, the request for a review by rehearing, applies with equal, if not greater, force to the phase of the subject now before this court, namely, the right to review by appeal. And the court's statement as to the general holding of courts, referring to a situation not then before the court but clearly analogous, in principle, to the matter then being considered, "that to allow a review of an

order of another court made in a habeas corpus case is inconsistent with the object of the writ," and its citation of leading authorities in support of the rule sanctioned by the weight of authority, clearly indicates what this court would have decided had the question of the right of appeal from an order of another court been directly involved in that case. This court, as then constituted, plainly furnished us, by what was stated as to the right of rehearing in the Eureka Bank Cases, supra, ample indication of its adherence, in principle, to the sounder rule as to the right of review in habeas corpus proceedings, in whatever form such right might be asserted. And the same fundamental principle then approved and applied as to the right of review by rehearing, if applied to the situation in the instant case, leads inevitably to the conclusion reached in the California cases, and by the great weight of authority, that, in the absence of statute, there is no right of review by appeal or writ of error, at the instance of either party, in a habeas corpus proceeding.

In California, the legislature of that state enacted a statute, in 1927, allowing appeal by the People, in a very limited class of cases. Such statute is section 1506 of the California Penal Code, and is as follows:

"An appeal may be taken to the district court of appeal by the people from a final order of a superior court made upon the return of a writ of habeas corpus discharging a defendant after his conviction, in all criminal cases prosecuted by indictment * * *."

Such statute clearly applies only to cases in which a defendant, *after conviction of a felony,* has been discharged by final order of a superior court, made upon return of a writ of habeas corpus. We have no such statute in Nevada, and if we had, same would not be applicable to the situation in the instant case, in which, *before conviction,* one charged with a crime in another state has been arrested and is being held upon an extradition warrant of the Governor of Nevada, issued by

reason of the requisition of the Governor of Michigan.

We cite, in addition to the citations hereinbefore made, the following cases wherein the supreme courts of the states of Oklahoma, New Mexico and Wyoming, respectively, have upheld the majority rule, namely, that in the absence of a statutory provision conferring such right, no right of appeal lies, at the instance of either party, from the order or judgment of a court, or the order of a justice or judge thereof, discharging or refusing to discharge a petitioner in a habeas corpus proceeding, in any case in which the petitioner has been arrested and is being held under criminal process: Wisener v. Burrell, 28 Okl. 546, 118 P. 999, 34 L.R.A., N.S., 755, Ann.Cas. 1912D, 356; Notestine v. Rogers, 18 N.M. 462, 138 P. 207; and Brugneaux v. Dankowski, Sheriff (Ex parte Brugneaux), 51 Wyo. 103, 63 P.2d 800.

In Wisener v. Burrell, supra, we will quote from the syllabus (page 999 of 118 P.), as follows:

"An appeal does not lie from an order in habeas corpus, discharging a party held for extradition for a criminal offense."

In Notestine v. Rogers (N.Mex.), supra, the appellant was the town marshal of the village of Dexter, in Chaves County, New Mexico. Appellee was arrested and held in custody by appellant. Appellee made application, to the judge of the Fifth judicial district of the state, for a writ of habeas corpus, and, upon the hearing, was discharged from the custody of the marshal. We will now quote from page 207 of the opinion as reported in 138 P., the following:

"From the order made, the town marshal prosecutes this appeal, which appellee has moved to dismiss, upon the ground that no appeal can be taken from an order made in habeas corpus proceeding, either discharging or remanding a petitioner.

"The prevailing doctrine in the state courts of this country is thus stated in 9 Am. & Eng.Ency.Pl. & Pr.

1072: 'Independent of statutory provisions, the best doctrine appears to be that a decision in a habeas corpus case is not of that final and conclusive character necessary to support a review by writ of error, and that no right of appeal exists.'

"The text is supported by the great weight of authority, as will be seen from an examination of the case notes appended to the following cases, reported in Ann. Cas., viz.: Wisener v. Burrell, Ann.Cas. 1912D, 356; Bleakley v. Smart, 11 Ann.Cas. 125; Cormack v. Marshall, 1 Ann.Cas. 256. And see, also, an extensive case note to the case of Wisener v. Burrell, 34 L.R.A.,N.S., 775. While the great weight of authority supports the text above quoted, some courts hold otherwise. The best reasoned case to the contrary which has been called to our attention is that of Winnovich v. Emery, 33 Utah 345, 93 P. 988; but an examination of the cases cited by the Utah court in support of its holding will show that some, but not all, of the cases upon which it relies for support were based upon statutes granting the right of appeal."

The learned Chief Justice Roberts then, in the opinion, considered the statutory provisions of that state relative to appeals in civil cases, and found them inapplicable. The concluding portion of the opinion, on page 208 of 138 P., is as follows:

"As was well said by the Criminal Court of Appeals of Oklahoma, in the case of Ex parte Johnson, 1 Okl.Cr. 414, 98 P. 461: 'Had it been intended to provide for appeals in habeas corpus, some appropriate provision would have been made. Its omission affords the best evidence to the contrary, and, if anything is wanting to remove all doubt, it will be found in the nature and object of this great writ as a constitutional right; its purpose being to afford a speedy remedy to a party unjustly accused of the commission of a crime without obstructing or delaying public justice, both of which objects would be defeated by the delays consequent upon

an appeal. Any other rule would operate practically to subvert the constitutional safeguards and the fundamental rights of the citizen.'

"That the legislature could provide for appeals in such cases is not doubted; but until it does so in clear and unequivocal language, and under suitable regulations which do not impair the constitutional provisions governing the right to the writ, the courts will deny such right.

"For the reasons stated, the appeal will be dismissed, and it is so ordered."

In Ex parte Brugneaux (Wyo.), supra, one Brugneaux was arrested by the sheriff of Sweetwater County, Wyoming, upon the extradition warrant of the Governor of Wyoming, issued upon the requisition of the Governor of Iowa. The prisoner filed, in the Third District Court of that State, a petition for a writ of habeas corpus, on October 21, 1935. On October 24, 1935, a hearing was had before that court, and judgment was entered, on that date, dismissing the petition and remanding the petitioner to the custody of the sheriff. From that order the petitioner appealed to the supreme court, and, in a very able opinion by Mr. Chief Justice Blume, concurred in by Mr. Justice Riner and Mr. Justice Kimball, the Supreme Court of Wyoming expressed adherence to the prevailing, or majority, rule that an appeal, whether by the prisoner or by the state or public officer holding him, and whether from an order discharging, or an order refusing to discharge and remanding the prisoner, is not allowable. In the opinion many authorities are cited which we have cited herein, including the California case of France et al. v. Superior Court, supra, quoted from at length, and Notestine v. Rogers, supra. We quote, with our approval, from the opinion on pages 801, 802 of 63 P.2d, the following:

"The cases giving the right of appeal and those denying it are collected in 29 C.J. 183, 184. The majority of the courts allow an appeal in cases involving the custody

of children. 29 C.J. 185. But the majority, in the absence of a statute, deny the right of appeal to the state in cases in which the prisoner is discharged on habeas corpus. 29 C.J. 184; 12 R.C.L. 1258; 5 A.L.R. 1156; Edmonson v. Ramsey, 122 Miss. 450, 84 So. 455, 10 A.L.R. 380, 385; [Baird v. Nagel, 194 Ind. 87, 142 N.E. 9], 30 A.L.R. 1324; see [People ex rel. Mark] v. Toman, 362 Ill. 232, 199 N.E. 124, 102 A.L.R. 382; and we think that, in the absence of an express statute, the majority of the courts also deny the right of appeal in cases in which the petition for habeas corpus has been dismissed. 29 C.J. 184; and see also, In re Simonson, 54 N.D. 164, 209 N.W. 211; State ex rel. v. District Court, 64 N.D. 399, 253 N.W., 744; Thomas v. State, 215 Ala. 1, 109 So. 607; Heisler v. State, 21 Ala.App. 416, 109 So. 124; Proffer v. Stewart, 259 Ky. 445, 82 S.W.2d 468; France et al. v. Superior Court, 201 Cal. 122, 255 P. 815, 817; 52 A.L.R. 869. In the last-cited case, the court stated: 'In this state the power to issue the writ of habeas corpus is conferred by the Constitution upon the Supreme Court and each of the Justices thereof, the District Courts of Appeal and each of the Justices thereof, and the superior court and "generally speaking as far as the power to issue the writ is concerned the Supreme Court, the District Courts of Appeal, and the superior courts are upon the same plane." 13 Cal.Jur. 257; Ex parte Zany, 164 Cal. 724, 130 P. 710; Matter of Hughes, 159 Cal. 360, 113 P. 684. By this is meant, however, as we understand these decisions, 'that the decision of any court in a habeas corpus proceeding, provided the court has jurisdiction, cannot be reviewed by any other court in any way.' Matter of Zany, supra (164 Cal. 724) page 726, 130 P. 710. The same principle is enunciated in the Hughes case, supra, although stated in slightly different language.'

"We think that we should give our adherence to that rule. The writ of habeas corpus is a high prerogative common-law writ designed for the purpose of giving a

speedy remedy to one who is unlawfully detained. 12 R.C.L. 1179. The very purpose of the writ will be thwarted if an appeal or proceeding in error were allowed, under the laws relating thereto. This was well pointed out in the case of Notestine v. Rogers, 18 N.M. 462, 138 P. 207. A petitioner in error may delay in bringing his proceeding in error for the period of six months. A record on appeal need not be filed until seventy days after the entry of the judgment. Then further delays occur. ' The right of a prisoner to be liberated cannot, accordingly, speedily be determined under such proceedings. The crime charged in the case at bar is comparatively unimportant, and judging from the evidence in the record, it is not improbable that justice would not be thwarted by delay. But that is not the criterion for the adoption of a rule. We must take into consideration that prisoners may be charged with murder, with kidnapping, and other heinous crimes. While the writ of habeas corpus is designed to secure the liberty of one unlawfully detained, it was never intended to protect persons guilty of crime, let alone a heinous crime, nor is it intended to give refuge to criminals in one state who have fled from another, and by the delay give opportunity for the disappearance of evidence by one method or another to prove the crime."

This court wishes to point out and emphasize that by this opinion the Supreme Court of Wyoming denied the right of appeal to a prisoner who had been denied discharge, upon a writ of habeas corpus, by the court below, whose petition had been dismissed and who had been remanded. It will be noted that, in support of that view, the learned Chief Justice cited Church on Habeas Corpus, sec. 386, and quoted therefrom at length, upon the point and in support of the view that appeal does not lie at the instance of one whose petition has been denied; also, cases upholding that view were cited from North Dakota, Alabama and Kentucky, in addition to California cases. In the instant case, the question which

is before us for decision is whether the appeal of Sheriff Thomas J. McLaughlin, of White Pine County, from whose custody the petitioner, Daniel Sullivan, had been, by the district court ordered discharged in the habeas corpus proceeding, shall be dismissed. To reach the proper determination upon the pending motion to dismiss the appeal of said sheriff, we believe that the proper approach is to determine first the fundamental question of whether or not it is the law of the State of Nevada that an appeal will lie to the supreme court from an order of a district court of this state, or a judge thereof, either discharging or refusing to discharge from custody a prisoner, before such court upon the return in a habeas corpus proceeding. After what we believe to have been thorough research and a careful consideration of the problem, in its various aspects, we are convinced, and as a basis for our decision herein, declare the law of Nevada, as we interpret and understand it, to be, that no right of appeal to this court lies from such an order of a district court or judge in a habeas corpus proceeding, either discharging or refusing to discharge one arrested and held under criminal process. To summarize our reasons, the following may be stated:

1. There is no statute in Nevada conferring the right of appeal from either an order discharging or refusing to discharge a prisoner, in a habeas corpus proceeding.

2. The law in California, at the time of the adoption of our Habeas Corpus Statute from the similar statute of that state, did not permit appeal from such an order in a habeas corpus proceeding, and, by the well-settled rule of statutory construction hereinbefore stated, our Legislature is presumed to have intended to adopt into our law not only the letter of the California statute so adopted, but, also, its interpretations by the highest court of that state, and we feel bound to follow such rule.

3. To allow an appeal, in cases where a prisoner has

been discharged upon habeas corpus, would, in many cases at least, mean rearresting and holding the accused, in violation of the express provisions of section 29 of the Nevada Habeas Corpus Act forbidding same.

4. This court, in the Eureka Bank Cases, supra, has expressly *decided* to adhere to the fundamental principle that there should be no review, involving as it does in many cases suspension and rearrest, in habeas corpus cases, and hence no rehearing in the same court; and the court, in connection with such ruling, *indicated, by clear implication at least,* adherence to the majority rule that *no review of a final order of another court in habeas corpus proceedings can be had* either by appeal or writ of error. More authorities had passed upon the appeal phase of the subject than upon the rehearing phase. The basic reasons were the same in each, for denying review; so, in reaching its conclusion, this court mentioned the appeal phase of the subject and cited authorities supporting same, thereby approving in *principle* the rule that there should be no "review of an order of another court," because, for the reasons before stated, "inconsistent with the object of the writ." Now that we are called upon to *decide* whether or not there is a right of appeal, our present holding that there is no such right in Nevada places, for the first time, upon the plane of *actual decision* that which this court, in the Eureka Bank Cases, adhered to *in principle.*

5. We believe the prevailing or majority rule to be the better rule, because same is best calculated to assure the preservation of two of the most beneficial characteristics of the great writ of habeas corpus, namely, (1) that the liberty of one unlawfully deprived thereof should be *speedily* restored to him, and (2) that such restoration should be *final.* To accomplish this beneficent result in the many cases in which the arrest and holding is unlawful, a rule of *general* application is required, even though in some cases a prisoner, denied discharge on habeas corpus, may desire, voluntarily, to

forego the right to speedy determination, and may wish to appeal to a higher court. Such a prisoner, denied appeal, is not deprived, however, of the right to continue to seek his liberty by a succession of original applications before other courts, justices or judges, until, as many jurists have said, he has "exhausted the judicial power of the state," and such remedy, thus open to him, in most cases would mean much less delay, even if a number of applications are made, than would be involved in appellate proceedings. In other words, a petitioner for the writ, who has been found to be *lawfully* held, cannot, because dissatisfied with the court's decision, be permitted to change the fundamental character of the proceeding from a proceeding of summary character to one involving long delays, lest this beneficent writ, intended as a shield for the innocent, be converted into a cloak to protect the guilty. As so well expressed by Mr. Chief Justice Blume in Ex parte Brugneaux, supra:

"While the writ of habeas corpus is designed to secure the liberty of one unlawfully detained, it was never intended to protect persons guilty of crime, let alone a heinous crime, nor is it intended to give refuge to criminals in one state who have fled from another, and by the delay give opportunity for the disappearance of evidence by one method or another to prove the crime."

Having determined, for the foregoing reasons, that in Nevada no appeal lies to this court from the judgment or order of a district court or judge, either discharging or refusing to discharge, upon a writ of habeas corpus, a prisoner arrested and being held under criminal process, it follows that the motion of the respondent to dismiss the appeal in the instant case should be granted. It is so ordered, and the appeal is dismissed.